## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

HOWARD UNIVERSITY,

                    Plaintiff,

         v.

-against-

LARRY BORDERS and
VIRGINIA BORDERS,

                    Defendants,

and

*CENTRALIA MADONNA*,
a DRAWING,

                    Defendant-in-rem.

Civil Action No. 20 _____

**COMPLAINT**

Peter C. Harvey (pcharvey@pbwt.com)
Erik Haas (ehaas@pbwt.com)
Jo Backer Laird (jblaird@pbwt.com)
Clinton W. Morrison (cmorrison@pbwt.com)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 336-2000
Fax:  (212) 336-2222

*Attorneys for Plaintiff Howard University*

Plaintiff Howard University, by its undersigned attorneys, asserts these claims for replevin, and a declaratory judgment against Defendants Larry and Virginia Borders, and asserts *in rem* claims against the world to declare its ownership rights and clear title to *Centralia Madonna*, a 1947 drawing by the late artist Charles White, and alleges and states as follows:

## NATURE OF THE ACTION

1.      This is an action by Howard University to recover and quiet title to a historically significant and highly valuable work of art—created by Charles White, one of the most important Black artists of the twentieth century—that was stolen from Howard University's collection.

2.      Charles White endeavored to advance social justice and racial equality through artwork that endowed African Americans with humanity and dignity at a time when derogatory and stereotypical depictions were all too common.  It was only fitting, then, that White would establish an indelible bond with Howard University, a historically Black university that has been dedicated to fostering academic excellence since its founding in 1867.  White served as artist-in-residence at Howard University in 1945, and he was named a Distinguished Professor in 1978.

3.      In 1947, two years after White completed his artist-in-residency tenure, Howard University purchased one of his works, *Centralia Madonna*, a 24 inch by 32 inch ink drawing of an African American Madonna figure with a sorrowful visage that White completed in 1947 (the "Work").  The University purchased the Work in the Fall of 1947, when it was part of an exhibition at the Washington, D.C.-based Barnett-Aden Gallery, which was founded and operated by the Chair of the Howard University Department of Art and the Curator of the Howard University Gallery of Art.  The University's purchase of the Work was listed in the Howard University Annual Report for 1947-1948 as an accession, and contemporaneous media reports documented the University' acquisition of the Work.

11845416

4.      The Work remained in the University's possession into the period of January 1973 to July 1974.  The Assistant Director of the Gallery, who was at that time a graduate student at the University, personally viewed the Work and contemporaneously documented that it was on the premises of the University in the Fall of 1972 and again during the period of January 1973 to July 1974 as part of his research for his Master's thesis.

5.      The Work was then stolen from the University's collection, and the Work vanished from public view.

6.      Nearly fifty years later, in May 2020, Howard University received an email from a representative of Sotheby's New York office.  The Sotheby's New York representative informed the University that the Work had been consigned to Sotheby's in New York, and that it would be offered for sale at Sotheby's upcoming auction, *American Art*, to be held in New York, New York.  Sotheby's acknowledged that its own research into the provenance of the Work confirmed that Howard University was the last documented owner of the Work.  But because the purported consignors of the Work—Defendants Larry and Virginia Borders—had no paperwork or records to establish how it traveled from Howard University's collection into their possession, Sotheby's asked the University for additional information to substantiate the Work's provenance.

7.      Defendants provided shifting explanations as to how they obtained possession of the Work.  Defendants initially claimed that a man named J.D. Kibler gave them the Work as wedding present in 1972.  They subsequently admitted that this was not in fact true, and claimed that they received the Work as a gift for no particular reason, again in 1972.

8.      Howard University repeatedly requested that Defendants clarify and corroborate how they came into possession of the Work.  Defendants did not do so.  Defendants failed to produce any paperwork or receipt evidencing Kibler's purported purchase of the Work or gift of

2

the Work to them.  They also had no explanation as to how Kibler came into possession of such a historically significant and valuable piece of art.  And although they claimed J.D. Kibler to be a close friend, they stated that they did not know what the "J.D." stood for.

9.      Defendants' claim that they obtained the Work in 1972 is false.  As noted, the Assistant Director of the Howard University Gallery of Art—who was a graduate student at Howard University from the Fall of 1972 to the Summer of 1974, and who has been with the University continuously for over four decades—personally viewed and contemporaneously documented the Work when it was located in the basement storage area of the Gallery at some point between January 1973 and July 1974.

10.      Defendants' claims are all the more implausible given that Howard University has never sold or de-accessioned any work from its collection, and would certainly not sell or de-accession a work by Charles White, a hugely significant Black artist with strong ties to the University.

11.      Howard University promptly informed Sotheby's and Defendants that the Work had been stolen from the University's collection, and demanded that Defendants return the Work to Howard University.  Defendants refused to comply with the University's repeated demands to return the work.

12.      Pending the outcome of this action, the Work is currently located in New York, New York, in the custody of Sotheby's New York.

13.      Howard University brings this action to recover and quiet title to this incredibly important piece of art by a renowned artist who made an indelible impact on the University and to return the Work to its rightful place:  the Howard University Gallery of Art.

11845416

**THE PARTIES**

14.     Plaintiff Howard University (the "University") is a not-for-profit institution of higher education located in Washington, D.C.  One of the oldest and most prestigious of the nation's historically Black colleges and universities, the University was founded in 1867, and is organized as a federally chartered nonprofit corporation.  *See* 20 U.S.C. § 121 et seq.

15.     The University established the Howard University Gallery of Art (the "Gallery") in 1928 to enhance the educational and artistic opportunities available to students by providing them with access to works of national and international artistic significance.  At the core of the Gallery's mission has been a commitment to feature and promote works by Black artists and works that promote and advance messages of racial and social justice.  The Gallery's collection is enjoyed year-round by the general public, students, faculty, and visiting scholars.

16.     Defendant-in-rem *Centralia Madonna* (the "Work") is a 1947 work of art by renowned African American artist Charles White.  Created in pen, ink, pencil, gouache and wash paper on a 24 by 32-inch board, the Work depicts an African American figure with a sorrowful expression.

17.     Defendant Larry Borders is an individual residing in South Carolina.  He claims to be the co-owner of the Work along with Defendant Virginia Borders.  Upon information and belief, Defendant has been in unauthorized possession of the Work since sometime in the mid-1970s.

18.     Defendant Virginia Borders is an individual residing in South Carolina.  She claims to be the co-owner of the Work along with Defendant Larry Borders.  Upon information and belief, Defendant has been in unauthorized possession of the Work since sometime in the mid-1970s.

## JURISDICTION AND VENUE

19.     The Court has diversity subject matter jurisdiction and supplemental subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1332(a) and 1367, because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy is no less than $300,000 to $500,000, which is the estimated present value of the Work according to Sotheby's.

20.     The Court has personal jurisdiction over Defendants Larry and Virginia Borders because the claims asserted herein arise under a transaction that occurred in New York, and Defendants have purposefully availed themselves of this jurisdiction.  Specifically, Defendants engaged in substantial communications concerning the planned consignment for the auction of the Work with Sotheby's while Sotheby's personnel were located in New York from their New York offices, with the goal and intention of putting the Work up for sale at Sotheby's *American Art* auction to be held in New York, New York on June 26, 2020.[1]

21.     In addition, this Court may exercise *in rem* and *quasi in rem* jurisdiction in this matter pursuant to 28 U.S.C. § 1655, because Plaintiff seeks in this suit to remove a cloud on the title of personal property located in New York, New York.

22.     This Court has jurisdiction to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202, and 1655.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the purported consignment of the Work was to Sotheby's New York for an auction to be held in New York, New York, Defendants engaged in substantial communications concerning the terms of the consignment of the Work with Sotheby's personnel in this District for a public auction to

---

[1] Sotheby's has agreed not to offer the Work for sale at the auction in light of this dispute.

take place in this District, and the Work itself has been stored in, and is presently located in this

District, at Sotheby's offices in New York, New York.  Venue is also proper in this District

pursuant to 28 U.S.C. § 1655.

<u>**FACTS**</u>

24.     This dispute concerns the theft from the collection of the Howard University

Gallery of Art of an ink drawing called *Centralia Madonna* (1947).  This Work was created by

the African American artist Charles White, who is widely regarded as one of the most important

American artists of the twentieth century.  An image of the Work follows:



**A.     The Significance of Charles White**

25.     Charles White was a highly skilled painter, draftsman, printmaker, and muralist.

He was a beloved teacher.  And he dedicated his life to advancing the cause of social justice and

11845416

racial equality through his art.

26.     Upon earning his art degree in 1938, White worked as a muralist for the federal Works Progress Administration and then set out on a career of creating and teaching art, first coming to national prominence in the 1940s.

27.     White's artwork was more than just art; it represented his contribution to the efforts to change the world for the better.  White's ethos is encapsulated in one of his most widely known quotations: "Art must be an integral part of the struggle.  It can't simply mirror what's taking place. It must adapt itself to human needs. It must ally itself with the forces of liberation. The fact is, artists have always been propagandists. I have no use for artists who try to divorce themselves from the struggle."[2]

28.     White's works reflect that sentiment.  He created vivid depictions of African Americans and endowed them with dignity, humanity, and power.  These images were particularly striking in the context in which they were created.  During the 1940s, to the extent images of African Americans were featured in popular culture and in art generally, they were typically derogatory, demeaning, and stereotypical.  White countered this racist imagery by focusing his work on creating powerful depictions of African Americans that highlighted their humanity, dignity, and power.

29.     The Work at issue in this proceeding—*Centralia Madonna*—is no exception.  It depicts a tall African American figure clothed as the Madonna with a deeply furrowed brow and a facial expression of grief and concern.  The figure is surrounded by swirling lines.  The right hand is folded across the figure's waist holding a Bible, and the left palm is lifted to the figure's

---

[2] Charles White, quoted in *Charles White, American, 1918-1979*, MoMA, https://www.moma.org/artists/6339#fn:1 (last visited June 18, 2020) (citing Jeffrey Elliot, "Charles White: Portrait of an Artist," *Negro History Bulletin* 41, no. 3 (May–June 1978): 828).

face as the figure stares off into the distance.

30.     White's works were not only critically acclaimed, they were also commercially in demand.  Once he became established as a national figure, his works were regularly sold before they were framed or even completed.  Collectors of his work have included celebrities such as Harry Belafonte, Sidney Poitier, and Paul Robeson, major corporations such as IBM, and prominent museums, including the Whitney Museum of American Art.

**B.     Howard University and Charles White Forge a Unique Bond**

31.     In the early 1940s, Charles White began his rise to national prominence and took his place among the leading African American artistic, intellectual, and cultural figures in the United States.

32.     Howard University, one of the nation's oldest and most prestigious historically Black colleges and universities, was an early supporter of White's work and a natural partner in his efforts to fight systemic racial injustice by empowering African Americans.

33.     In 1942, the Howard University Gallery of Art acquired its first work by Charles White, *Native Son #2* (1942).  This piece was recently exhibited at a Charles White Retrospective at the Museum of Modern Art in New York.

34.     In 1945, White served as artist-in-residence at Howard University.  As artist-in-residence, White made a direct and lasting impact on the University's graduate and undergraduate students, faculty, and staff.

35.     In the decades that followed, the University would acquire several additional works by its former artist-in-residence, including White's ink drawing *Dr. G.W. Carver* (1943), his color ink woodcut *Mother Courage* (1962), his lithographs *Awaiting His Return* (1946), *Hope for the Future* (1946), *Gideon* (1956), and *Juba #2* (1965), and perhaps White's most famous work, *Five Great American Negroes* (1939), which was his first mural for the federal

11845416

Works Progress Administration and which depicts Sojourner Truth, Booker T. Washington, Frederick Douglass, George Washington Carver and Marian Anderson:



36.     In 1978, White was named a Distinguished Professor at Howard University for a three-year term.  He passed away the following year.

37.     For decades, the University has proudly displayed Charles White's works for the public's enjoyment and consumption, and it regularly loans these works out to other renowned institutions so that members of the public in other parts of the country and the world may also see these important works in person.  In the Fall of 2018, the University loaned *Native Son #2* and *Five Great American Negroes* to the Museum of Modern Art in New York as part of a Charles White retrospective; *Five Great American Negroes* is currently on loan to the Whitney Museum of American Art as part of a show on muralists.

**C.     Howard University Acquires the Work and Retains Possession Until the Mid-1970s**

38.     In 1947, shortly after concluding his tenure as the University's artist-in-residence, White's work was featured in an exhibition at the legendary Barnett-Aden Gallery in Washington, D.C.  The Barnett-Aden Gallery was a privately-owned Black gallery in the United States, and was founded by two integral figures in the history of the Howard University

11845416

Department of Art and Gallery of Art:  James Vernon Herring, the Chair of the Howard University Department of Art, and Alonzo Aden, the Curator of the Howard University Gallery of Art.

39.     Howard purchased the Work in the Fall of 1947, while it was on exhibit at the Barnett-Aden Gallery.  Howard's acquisition of the Work is reflected in the 1947-1948 Howard University Annual Report of the College of Liberal Arts, which lists the Work as one of the Gallery's accessions during that period.  The University's purchase of the Work at this time was also publicly documented in the press.

40.     Apart from the occasional loan to another institution—the Work was loaned to the Museum of Fine Arts, Boston in January 1970 for an exhibition that ran from February 9, 1970 to March 10, 1970—the Work remained on the premises of the University and in its possession at least as of January 1973.  The Gallery's current Assistant Director, Scott Baker, personally viewed and contemporaneously documented the Work on the premises of the Howard University Gallery of Art initially in the Fall of 1972 and then again at some time between January 1973 and July 1974.

41.     Mr. Baker was at that time a graduate student in the Howard University Department of Art pursuing his Master's degree under the direction and guidance of Dr. Jeff Donaldson, who was at the time the Chair of the Howard University Department of Art and the Director of the Howard University Gallery of Art.

42.     For his Master's thesis, and at Dr. Donaldson's request, Mr. Baker authored a comprehensive catalogue that described every piece of artwork in the Gallery's collection that had been created by a Black artist.  The Work is featured in Mr. Baker's thesis, which Mr. Baker wrote over the period of January 1973 through July 1974.

11845416

43.     As part of that project, Mr. Baker spent his first semester of graduate school in the Fall of 1972 working on an outline for his thesis so that he could determine in advance which works he would need to describe in the catalogue.

44.     As part of that outlining process in the Fall of 1972, Mr. Baker personally viewed the Work in the basement storage facility of the Gallery, as it was a work in the University's collection that was created by a Black artist, i.e., Charles White.

45.     After Dr. Donaldson approved the outline for the thesis at the end of the Fall 1972 semester, Mr. Baker began working on the substance of his thesis during his second semester of graduate school, which began in January 1973.

46.     Over the course of his remaining time in graduate school—from January 1973 through July 1974—Mr. Baker personally viewed on the premises of Howard University each work that he described in his thesis.  For works located in basement storage, Mr. Baker provided the names of the works to Dr. A.J. Carter, then the Curator of the Gallery, who would retrieve the works for him.  Mr. Baker sat with each work for one to two hours at a time, as he took detailed notes that would form the basis for his descriptions of each work in his thesis.  Mr. Baker's thesis would not have photographs, so it was crucial that he take time to write out every possible detail about the work as he viewed it so as to enable him to paint a picture with words for the reader.

47.     As part of this process, Mr. Baker personally viewed the Work on the premises of Howard University at some point between January 1973 and July 1974, and took detailed notes of its appearance and characteristics.

48.     The description of the Work in Mr. Baker's graduate thesis evidences the thoroughness with which he viewed and took notes on the Work at this time:

11845416

"Centralia Madonna" N.D.

Colored pen and ink

24 X 32 in.

Frontal portrait of standing man immersed in swirling lines.  Head
rests in palm of left hand.  Right hand holding Bible supports left
elbow.  His cloths consist of two buttonless smocks.  47.4

49.     This description precisely matches the above-depicted Work.

**D.     The Work is Stolen From the University's Collection**

50.     At some point between when Mr. Baker personally viewed the Work in the period

of January 1973 to July 1974, and 1976, the Work was stolen from the University's collection.

51.     When the Gallery's then-curator, Dr. A.J. Carter, retired in 1976, he left his

successor with a comprehensive inventory of the entire contents of the Gallery's collection.

52.     The Carter inventory listed every drawing, oil painting, print, sculpture,

watercolor, and gouache in the Gallery's collection as of that moment in time, and certain other

information, including the name of the artist, a description of how the University came to own

each work (i.e., purchase or gift), the condition of the work, and an approximation of its value.

53.     The Carter inventory lists several Charles White works, including *Centralia

Madonna*.  It notes that the University purchased the work, and it lists an approximate valuation

of $1,000 in 1976 dollars, an amount several times more valuable than the vast majority of other

entries in the inventory.  The Carter inventory indicates that the Work was missing as of the time

the inventory was completed and that Carter believed that it may have been on loan to another

institution, as the inventory says "Loan(?)" next to the Work under a column marked

Miscellaneous.

54.     The University's records confirm that the Work was not loaned out to any other

institution at any point between the time Mr. Baker saw the work in 1973-74 and the time the

Work was recorded as missing by Dr. Carter in 1976.  None of the 1973-1976 Annual Reports for the Howard University Department of Art (of which the Gallery was a part at the time) list the Work as having been loaned out, but each of those reports did list loans of other works by other artists during that period.

55.     Moreover, the University has never sold or de-accessioned a work from its collection.  Indeed, at the time of the Work's disappearance, the Gallery was working towards increasing the size of its collection and had already implemented a policy not to de-accession any artwork.  Furthermore, it was and remains against generally accepted museum practices to de-accession the work of a living artist.

56.     Unsurprisingly, Mr. Baker is not aware of any such sale or de-accession and certainly would be if one had occurred given his employment and association with the University for over four decades.

57.     Since the Carter inventory was finalized in 1976, the University has been unable to locate the work.  Indeed, in the decades since, the Work has vanished, it has not appeared in any public exhibitions, not been offered in any public auctions or private sales, and has not left a single clue as to its whereabouts.

### E.     A Half-Century Later, the Work Re-Emerges in Defendants' Possession, With No Paperwork, No Record of Sale, and Shifting Explanations

58.     Just a few weeks ago, that all changed.  Howard University was contacted by a representative of Sotheby's New York who explained that Sotheby's New York had been engaged by Defendants to offer the Work for sale at an upcoming public auction in New York, New York as part of Sotheby's *American Art* sale.

59.     Because Defendants had no documentation or information about the circumstances surrounding the Work's removal from the Howard University collection or how it

11845416

ended up in the hands of Kibler, the person who allegedly gave Defendants the Work, Sotheby's reached out to the University for more information about the Work's provenance.

60.     When the University informed Sotheby's that the Work had been removed from the University's collection without authorization and asked for additional details underlying Defendants' claims, substantial gaps and inconsistencies in Defendants' story emerged.

61.     Sotheby's had initially indicated to Howard representatives that the Borders had received the piece as a wedding gift in 1972.  However, during a subsequent phone call with Defendants, representatives of the University, and representatives of Sotheby's, Defendants claimed that in fact they did not receive the Work as a wedding gift but rather as a gift from J.D. Kibler for no particular reason.  When asked why Kibler gave them the Work, Defendants could not cite a specific reason for such a valuable and noteworthy gift other than the purported fact that Kibler was a family friend.  This explanation was particularly implausible given that at the time of the purported gift, Charles White was already a prominent national figure whose works were in heavy demand by private and institutional collectors alike.  Further, despite the fact that he was alleged to be a family friend, Defendants did not know Kibler's full name nor could they say what the initials "J" and "D" stood for.  Defendants also had little to no information about Kibler; they did not know whether he was married or had children, and they did not know specifically about his employment other than that they believed that he had worked for the state of South Carolina in some capacity.

62.     Moreover, the University's investigation showed that Defendants could not have received the Work in 1972, and that their claims to the contrary are simply false.  Such claims cannot be reconciled with the fact that Mr. Baker personally viewed the Work on the premises of Howard University as late as 1973 or 1974, when he was working on his graduate thesis.

11845416

63.     And Defendants provided no explanation as to how Kibler could have purchased a Work from the University's collection given that the University has never sold or de-accessioned a work from its collection and that it would be preposterous for the University to sell a work by Charles White, given his significance both to Howard specifically and to the art community generally.

**F.      The University Demands That Defendants Return the Work, and Defendants Refuse to Comply With the University's Demand**

64.     On June 1, 2020, Howard University informed Defendants on a telephone call, which also involved representatives from Sotheby's, that the University had never sold the Work to a third party, that the Work was removed without authorization from the University's collection, and that the University is the sole rightful owner of the Work.

65.     On June 2, 2020, the University reiterated its sole ownership of the Work in an email to Sotheby's, and formally requested that Sotheby's hold the Work in its custody pending the resolution of the dispute between the parties.

66.     On June 17, 2020, Howard University again informed Defendants that Howard is the sole and true rightful owner of the Work and demanded that Defendants immediately return the Work to Howard University.

67.     On June 18, 2020, Defendants refused to comply with that demand, thereby forcing Howard University to file this action.

68.     The Work is presently in the custody of Sotheby's New York, in this District, pending the resolution of this action.

11845416

## CLAIMS FOR RELIEF

### FIRST CLAIM

### DECLARATORY JUDGMENT UNDER
### 28 U.S.C. §§ 2201, 2202

(*In personam*)

69.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein in full.

70.     Plaintiff is the owner of the Work, and entitled to recover sole and immediate possession of the Work.

71.     The Work was removed from Plaintiff's collection without authorization.

72.     Defendants have been in unauthorized possession of the Work and have falsely and erroneously claimed, to both Plaintiff and third parties, that they own the Work.

73.     There is a genuine and bona fide dispute and an actual controversy and disagreement between Plaintiff and Defendants regarding whether Plaintiff or Defendants have a superior claim to title and ownership of the Work.

74.     Plaintiff has demanded the return of the Work, and Defendants have refused to deliver the Work to Plaintiff.

75.     Plaintiff has no adequate remedy at law, as the Work is unique.

76.     Plaintiff is entitled to a declaratory judgment from this Court that Plaintiff is the true owner of the Work, and that Plaintiff's claim to title in and ownership of the Work is superior to Defendants' claims of title to and ownership of the Work.

### SECOND CLAIM

### ORDER QUIETING TITLE UNDER
### 28 U.S.C. § 1655

(*Quasi in rem* and *In rem*)

11845416

77.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein in full.

78.     Plaintiff is the owner of the Work, and entitled to recover sole and immediate possession of the Work.

79.     The Work was removed from Plaintiff's collection without authorization.

80.     Defendants have been in unauthorized possession of the Work and have falsely and erroneously claimed, to both Plaintiff and third parties, that they own the Work.

81.     There is a genuine and bona fide dispute and an actual controversy and disagreement between Plaintiff and Defendants regarding whether Plaintiff or Defendants have a superior claim to title and ownership of the Work.

82.     Plaintiff has demanded the return of the Work, and Defendants have refused to deliver the Work to Plaintiff.

83.     Plaintiff has no adequate remedy at law, as the Work is unique.

84.     Plaintiff is entitled to a declaratory judgment from this Court that Plaintiff is the true owner of the work to the exclusion of all others, that all right, title, interest, and ownership in and to the Work is vested in Plaintiff, and that Defendants have no right, title, interest or claim of ownership in the Work.

**THIRD CLAIM**

**REPLEVIN UNDER NEW YORK COMMON LAW**

*(In personam)*

85.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the foregoing paragraphs as if fully set forth herein in full.

86.     Plaintiff is the rightful owner of the Work, and is entitled to immediate possession of the Work.

17

87.     The Work was removed from Plaintiff's collection without authorization.

88.     Defendants have been in unauthorized possession of the Work.

89.     Plaintiff has demanded the return of the Work, and Defendants have refused to deliver the Work to Plaintiff.

90.     Plaintiff has no adequate remedy at law, as the Work is unique.

91.     By virtue of the foregoing, Plaintiff is entitled to the immediate return of the Work.

11845416

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following:

A.   A judgment declaring that all right, title, and interest in the Work is vested in Plaintiff, and that Defendants have no right, title or interest in the Work.

B.   An order directing the return of the Work to Plaintiff.

C.   An award of Plaintiff's attorneys' fees, expenses, and costs to the extent permitted by law.

D.   Any other relief the Court deems just and proper.

Dated:   New York, New York
June 19, 2020

PATTERSON BELKNAP WEBB & TYLER LLP

By: _____
Peter C. Harvey (pcharvey@pbwt.com)
Erik Haas (ehaas@pbwt.com)
Jo Backer Laird (jblaird@pbwt.com)
Clinton W. Morrison (cmorrison@pbwt.com)
1133 Avenue of the Americas
New York, New York 10036-6710
Tel: (212) 336-2000
Fax: (212) 336-2222

*Attorneys for Plaintiff Howard University*

19

11845416