UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOWARD UNIVERSITY, | No. 20-CV-4716 (LGS) |
| *Plaintiff-Counterclaim Defendant,* | |
| - against - | **ANSWER AND COUNTERCLAIMS** |
| LARRY BORDERS and VIRGINIA BORDERS, | |
| *Defendants-Counterclaim Plaintiffs,* | |
| *CENTRALIA MADONNA,* A DRAWING. | |
| *Defendant-in-rem.* | |

Defendants and Counterclaim Plaintiffs Larry Borders and Virginia Borders (the "Borders"), by their attorneys, Olsoff | Cahill | Cossu LLP, as and for their answer, affirmative defenses, and counterclaims to the Complaint, ECF No. 1 (the "Complaint") of Plaintiff and Counterclaim Defendant Howard University (the "University"), states as follows:

**ANSWER**

1.     The Borders deny the allegations contained in Paragraph 1 of the Complaint, except admit that University has brought this action concerning a work of art by Charles White (the "Artwork"), and deny personal knowledge or information sufficient to form a belief as to the truth of what is alleged concerning the importance of the Artwork and of Charles White.

2.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint.

3.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint.

4.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint.

5.     The Borders deny the allegations contained in Paragraph 5 of the Complaint.

6.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint.

7.     The Borders deny the allegations contained in Paragraph 7 of the Complaint.

8.     The Borders deny the allegations contained in Paragraph 8 of the Complaint.

9.     The Borders deny the allegations contained in Paragraph 9 of the Complaint.

10.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint.

11.     The Borders deny the allegations contained in Paragraph 11 of the Complaint, except aver that even if a demand had been made by the University for the return of the Artwork, the Borders have no legal obligation to release the Artwork to the University.

12.     The Borders deny the allegations contained in Paragraph 12 of the Complaint, except admit the Artwork is in the custody of Sotheby's New York.

13.     The Borders deny the allegations contained in Paragraph 13 of the Complaint.

14.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

15.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint.

16.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint, except admit that the Artwork is by Charles White.

17.     The Borders deny the allegations contained in Paragraph 17 of the Complaint, except admit that Larry Borders and Virginia Borders together own the Artwork.

18.     The Borders deny the allegations contained in Paragraph 18 of the Complaint, except admit that Virginia Borders and Larry Borders together own the Artwork.

19.     No response is necessary to the allegations in Paragraph 19 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint.

20.     No response is necessary to the allegations in Paragraph 20 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny the allegations contained in Paragraph 20 of the Complaint.

21.     No response is necessary to the allegations in Paragraph 21 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint.

22.     No response is necessary to the allegations in Paragraph 22 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint.

23.     No response is necessary to the allegations in Paragraph 23 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint.

24.     The Borders deny the allegations contained in Paragraph 24 of the Complaint, except admit that University has brought this action concerning the Artwork and that Charles White was one of the most important American artists of the twentieth century.

25.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint.

26.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint.

27.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint.

28.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint.

29.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint, and respectfully refer the Court to the Artwork itself for an assessment of its imagery.

30.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint.

31.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint.

32.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint.

33.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint.

34.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Complaint.

35.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint.

36.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint.

37.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 of the Complaint.

38.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Complaint.

39.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 of the Complaint.

40.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 of the Complaint.

41.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 of the Complaint.

42.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 of the Complaint.

43.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 of the Complaint.

44.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 of the Complaint.

45.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 of the Complaint.

46.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46 of the Complaint.

47.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 47 of the Complaint.

48.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48 of the Complaint.

49.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 of the Complaint.

50.     The Borders deny the allegations contained in Paragraph 50 of the Complaint.

51.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 51 of the Complaint.

52.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 of the Complaint.

53.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 of the Complaint.

54.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54 of the Complaint.

55.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 of the Complaint.

56.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 of the Complaint.

57.     The Borders deny the allegations contained in Paragraph 57 of the Complaint.

58.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58 of the Complaint.

59.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 of the Complaint.

60.     The Borders deny the allegations contained in Paragraph 60 of the Complaint.

61.     The Borders deny the allegations contained in Paragraph 61 of the Complaint,

62.     The Borders deny the allegations contained in Paragraph 62 of the Complaint.

63.     The Borders deny the allegations contained in Paragraph 63 of the Complaint.

64.     The Borders deny the allegations contained in Paragraph 64 of the Complaint, except admit that the University asserted its unsupported position on the call.

65.     The Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65 of the Complaint.

66.     The Borders deny the allegations contained in Paragraph 66 of the Complaint, except admit that the University reasserted its unsupported position on the call.

67.     The Borders deny the allegations contained in Paragraph 67 of the Complaint.

68.     The Borders deny the allegations contained in Paragraph 68 of the Complaint, except admit the Artwork is in the custody of Sotheby's New York.

69.     The Borders repeat their responses to Paragraphs 1-68 of the Complaint as if fully set forth herein.

70.     No response is necessary to the allegations in Paragraph 70 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny the allegations contained in Paragraph 70 of the Complaint.

71.     The Borders deny the allegations contained in Paragraph 71 of the Complaint.

72.     No response is necessary to the allegations in Paragraph 72 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny the allegations contained in Paragraph 72 of the Complaint.

73.     No response is necessary to the allegations in Paragraph 73 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders admit the University disputes the Borders' good title and ownership of the Artwork.

74.     The Borders deny the allegations contained in Paragraph 74 of the Complaint.

75.     No response is necessary to the allegations in Paragraph 75 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75 of the Complaint.

76.     No response is necessary to the allegations in Paragraph 76 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny the allegations contained in Paragraph 76 of the Complaint.

77.     The Borders repeat their responses to Paragraphs 1-76 of the Complaint as if fully set forth herein.

78.     No response is necessary to the allegations in Paragraph 78 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny the allegations contained in Paragraph 78 of the Complaint.

79.     The Borders deny the allegations contained in Paragraph 79 of the Complaint.

80.     No response is necessary to the allegations in Paragraph 80 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny the allegations contained in Paragraph 80 of the Complaint.

81.     No response is necessary to the allegations in Paragraph 81 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders admit the University disputes the Borders' good title and ownership of the Artwork.

82.     The Borders deny the allegations contained in Paragraph 82 of the Complaint.

83.     No response is necessary to the allegations in Paragraph 83 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 of the Complaint.

84.     No response is necessary to the allegations in Paragraph 84 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny the allegations contained in Paragraph 84 of the Complaint.

85.     The Borders repeat their responses to Paragraphs 1-84 of the Complaint as if fully set forth herein.

86.     No response is necessary to the allegations in Paragraph 86 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny the allegations contained in Paragraph 86 of the Complaint.

87.     The Borders deny the allegations contained in Paragraph 87 of the Complaint.

88.     No response is necessary to the allegations in Paragraph 88 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny the allegations contained in Paragraph 88 of the Complaint.

89.     The Borders deny the allegations contained in Paragraph 89 of the Complaint.

90.     No response is necessary to the allegations in Paragraph 90 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90 of the Complaint.

91.     No response is necessary to the allegations in Paragraph 91 of the Complaint, which consist of legal conclusions. To the extent a response is necessary, the Borders deny the allegations contained in Paragraph 91 of the Complaint.

## AFFIRMATIVE DEFENSES

Without assuming the burden of (a) proof or (b) detailing the relevant facts set forth in the Complaint, the Borders assert the following defenses.

### FIRST AFFIRMATIVE DEFENSE

The University fails to state a claim against the Borders for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The University's claims are barred by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

The University's claims are barred by laches.

### FOURTH AFFIRMATIVE DEFENSE

The University's claims are barred under the "entrustment rule" of the Uniform Commercial Code.

### FIFTH AFFIRMATIVE DEFENSE

The University's claims are barred under the doctrines of equitable estoppel, unclean hands, culpable conduct, and/or waiver.

### SIXTH AFFIRMATIVE DEFENSE

The University's claims are barred by the fact that the Artwork was not stolen and/or that the University does not have title to the Artwork.

### SEVENTH AFFIRMATIVE DEFENSE

The University's claims are barred by its own intentional conduct, which may have included the voluntary transfer of title to an employee or other third-party.

### EIGHTH AFFIRMATIVE DEFENSE

The University's claims are barred by its negligence in failing to secure and/or monitor (including vis-à-vis its agents and employees) the Artwork, and/or in entrusting the Artwork to a faithless agent.

### NINTH AFFIRMATIVE DEFENSE

The Complaint, or portions thereof, should be stricken because in-house counsel for the University, Lisa Jones Gentry and Florence Prioleau, violated Rule 4.3 of the District of Columbia's Rules of Professional Conduct by not advising the Borders to obtain counsel when seeking information from the Borders and requesting that the Borders return the Artwork to the University.

### TENTH AFFIRMATIVE DEFENSE

The University's claims are barred, in whole or in part, by the University's failure to mitigate its damages.

### ELEVENTH AFFIRMATIVE DEFENSE

The Borders assert each and every defense available to them under applicable law and reserve the right to assert additional defenses.

**COUNTERCLAIMS**

92.     These counterclaims seek a declaratory judgment and damages for slander of title and tortious interference arising out of the University's wrongful claims that it holds an interest in the Artwork that is superior to the Borders and that the Borders have been dishonest.

93.     The Borders are an elderly African-American couple that have lived with, and loved, the Charles White Artwork for nearly all of the almost 50 years of their marriage. For over four decades, the Borders cherished the Artwork, took it with them when they moved homes, and never realized that it had any significant monetary value.

94.     The Borders were shocked to learn of the University's claims. In good faith, the Borders joined a telephone call with the University's lawyers—without the representation of counsel or receiving any advice to retain counsel—in which the Borders gave their best estimate of when they received the Artwork, what they recalled about the gift-giver, and corrected the University's lawyers' alleged misapprehension that the Artwork was a wedding gift, because it was not.

95.     The Borders have never changed that story as the University's Complaint falsely alleges.

96.     When asked for any documentation of the University's acquisition or possession of the Artwork, the University refused to provide any, or even to discuss the documentary basis of its claims, if any, by telephone.

97.     The University instead filed this lawsuit in bad faith.

98.     Based on the limited information that the Borders have been able to ascertain from the Complaint, it appears that for approximately 45 years, the University knew that the Artwork was no longer in its possession and did not know where it was.

99.    Neither in 1976, when it—via the University Art Gallery's Director—first acknowledged not knowing the location of the Artwork in writing, or thereafter did the University take any steps to publicly identify it as stolen.

100.   Charles White was a Distinguished Professor at the University during part of the period of time when the Artwork was no longer in the University's possession.

101.   Neither Mr. White nor the University raised any concerns about the fact that the Artwork was no longer at the University.

102.   The University did not consider the Artwork to be owned by the University until the occasion arose in 2020 for it to claim ownership over a "highly valuable" Artwork.

**PARTIES AND JURISDICTION**

103.   Counterclaim-Plaintiff Larry Borders is an individual residing in North Carolina.

104.   Counterclaim-Plaintiff Virginia Borders is an individual residing in North Carolina.

105.   Counterclaim-Defendant Howard University is, upon information and belief, is a corporation with a principal place of business in Washington, D.C.

106.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332, due to the complete diversity of the parties and because the amount in controversy exceeds $75,000.

107.   This Court has personal jurisdiction over the University as it has purposefully availed itself of the New York State court system and has committed tortious acts in the State of New York.

108.     Venue is proper in this District pursuant to 28 U.S.C § 1391 because a substantial part of the acts that gave rise to the present dispute occurred in the Southern District of New York.

## FACTUAL ALLEGATIONS

109.     Larry and Virginia Borders were married in 1971.

110.     Mr. Borders worked at IBM for many years.

111.     As part of his work for IBM, Mr. Borders was sent to New York, Paris, and other locations.

112.     Mr. Borders retired from IBM in 2011.

113.     For the last decade since his retirement, Mr. Borders has been active in his local community in supporting and promoting small businesses and entrepreneurial enterprises that are owned or managed by persons of color.

114.     Mr. Borders heads several nonprofits in his local community.

115.     In the early 1970s, a friend of the Borders, J.D. Kibler, gifted the Artwork to the Borders.

116.     Upon information and belief, for a period of time in the 1970s, Mr. Kibler was the President of the South Carolina Counseling Association, the state branch of the American Counseling Assocation.

117.     At the time of the gift, the Borders had no reason to believe that the Artwork was particularly valuable.

118.     The Artwork was accompanied by another gift of artwork, which was not then and is not now particularly valuable.

119.    The Borders kept the Artwork on their walls, despite moving several times, from the 1970s until recently when, after seeing the value of artworks by Charles White on Antiques Roadshow, they decided to sell the Artwork.

120.    Having no reason to believe that there were any ownership issues with the Artwork, the Borders consigned that Artwork to Sotheby's for sale at public auction.

121.    Having no reason to believe that there were any ownership issues with the Artwork, the Borders authorized Sotheby's to contact experts and other third parties concerning the authenticity and provenance of the Artwork.

122.    Prior to the planned sale of the Artwork, the Borders were informed by Sotheby's that the University had claimed that the Artwork had gone missing from its collection and that the University was claiming to still own the Artwork.

123.    Because the Borders had no reason to believe that anything untoward had taken place with the Artwork before it was gifted to them nearly 50 years ago, the Borders provided all the information that they had about the Artwork to Sotheby's, so that it could be provided to the University.

124.    Sotheby's then advised the Borders that the University wanted to have a call with the Borders to get more information about how the Borders came to possess the Artwork.

125.    Because the Borders had nothing to hide, they agreed to have a call with the University.

126.    On or about June 1, 2020, the Borders participated in a conference call with the University and Sotheby's.

127.    The University had several representatives on the call, including its General Counsel, Florence Prioleau, and its Senior Counsel, Lisa Jones Gentry.

15

128.    The Borders participated in the call without legal counsel.

129.    The Borders participated in the call without legal counsel because they believed the call to be a good-faith attempt by all parties to get more background on the Artwork.

130.    The Borders were entirely forthcoming on the call, and even corrected the University's alleged misapprehension that the Artwork had been a wedding gift by noting that the Artwork had been given to them some time after their wedding, but that they never understood it to be a wedding gift.

131.    By contrast, the University, via Ms. Jones Gentry and Ms. Prioleau, withheld information from the Borders concerning the lack of documentation that the University has to support its claims to ownership of the Artwork.

132.    Further, neither Ms. Jones Gentry nor Ms. Prioleau advised the Borders to obtain legal counsel, despite their using the conference call to threaten to call the FBI if the University's ownership of the Artwork was not accepted.

133.    In light of the University's demand for the Artwork to be returned, the Borders' retained counsel in June 2020.

134.    Several requests were then made to Ms. Jones Gentry for the University to provide the documentation that it claimed supported its ownership of the Artwork.

135.    Ms. Jones Gentry refused to provide such documentation.

136.    Rather, Ms. Jones Gentry demanded that the Borders accept the University's ownership assertion at face value.

137.    Unable, or unwilling, to produce any evidence of its ownership of the Artwork, the University filed its Complaint without any advance notice to the Borders, despite what

appears to be a decades-long course of conduct in which the University knew that the Artwork was no longer in its possession and, yet, did not treat the Artwork as stolen or missing.

**The University's Lack of Evidence and Its Pursuit of Its Alleged Claim**

138.     Upon information and belief, the University possesses no bill of sale or invoice for the Artwork.

139.     As alleged by the Complaint (¶ 13), the Artwork is an "incredibly important piece of art by a renowned artist who made an indelible impact on the University."

140.     A large number of owners of valuable artworks purchase insurance to cover loss or damage to their artworks.

141.     At all times during which the University claims to have owned the Artwork, insurance covering loss or damage to fine art like the Artwork was available for purchase.

142.     Upon information and belief, the University possesses no records reflecting that it insured this "incredibly important" Artwork.

143.     As alleged by the Complaint (¶ 53), no later than 1976, the University knew that it was no longer in possession of the Artwork.

144.     Upon information and belief, the University did little or nothing to pursue the alleged theft of this "incredibly important" Artwork after learning the Artwork was no longer in its possession no later than 1976.

145.     Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1976.

146.     Upon information and belief, the University did not register the Artwork as missing or stolen in 1976.

147.    Upon information and belief, the University did not file an insurance claim in 1976 in connection with its alleged loss of the Artwork.

148.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1977.

149.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1977.

150.    Upon information and belief, the University did not file an insurance claim in 1977 in connection with its alleged loss of the Artwork.

151.    As alleged by the Complaint (¶ 36), Charles White was named a Distinguished Professor of the University in 1978.

152.    Upon information and belief, the University did not inform Charles White that the Artwork had been stolen.

153.    Upon information and belief, the University did not inform Charles White that the Artwork had been lost.

154.    Upon information and belief, the University did not inform Charles White that the Artwork had been removed from the University without authorization.

155.    Upon information and belief, the University did not inform Charles White that the Artwork had been loaned.

156.    Upon information and belief, Charles White never raised any concern that the Artwork was not at the University while he was a Distinguished Professor.

157.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1978.

158.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1978.

159.    Upon information and belief, the University did not file an insurance claim in 1978 in connection with its alleged loss of the Artwork.

160.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1979.

161.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1979.

162.    Upon information and belief, the University did not file an insurance claim in 1979 in connection with its alleged loss of the Artwork.

163.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1980.

164.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1980.

165.    Upon information and belief, the University did not file an insurance claim in 1980 in connection with its alleged loss of the Artwork.

166.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1981.

167.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1981.

168.    Upon information and belief, the University did not file an insurance claim in 1981 in connection with its alleged loss of the Artwork.

169.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1982.

170.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1982.

171.    Upon information and belief, the University did not file an insurance claim in 1982 in connection with its alleged loss of the Artwork.

172.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1983.

173.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1983.

174.    Upon information and belief, the University did not file an insurance claim in 1983 in connection with its alleged loss of the Artwork.

175.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1984.

176.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1984.

177.    Upon information and belief, the University did not file an insurance claim in 1984 in connection with its alleged loss of the Artwork.

178.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1985.

179.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1985.

180.    Upon information and belief, the University did not file an insurance claim in 1985 in connection with its alleged loss of the Artwork.

181.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1986.

182.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1986.

183.    Upon information and belief, the University did not file an insurance claim in 1986 in connection with its alleged loss of the Artwork.

184.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1987.

185.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1987.

186.    Upon information and belief, the University did not file an insurance claim in 1987 in connection with its alleged loss of the Artwork.

187.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1988.

188.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1988.

189.    Upon information and belief, the University did not file an insurance claim in 1988 in connection with its alleged loss of the Artwork.

190.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1989.

191.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1989.

192.    Upon information and belief, the University did not file an insurance claim in 1989 in connection with its alleged loss of the Artwork.

193.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1990.

194.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1990.

195.    Upon information and belief, the University did not file an insurance claim in 1990 in connection with its alleged loss of the Artwork.

196.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1991.

197.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1991.

198.    Upon information and belief, the University did not file an insurance claim in 1991 in connection with its alleged loss of the Artwork.

199.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1992.

200.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1992.

201.    Upon information and belief, the University did not file an insurance claim in 1992 in connection with its alleged loss of the Artwork.

202.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1993.

203.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1993.

204.    Upon information and belief, the University did not file an insurance claim in 1993 in connection with its alleged loss of the Artwork.

205.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1994.

206.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1994.

207.    Upon information and belief, the University did not file an insurance claim in 1994 in connection with its alleged loss of the Artwork.

208.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1995.

209.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1995.

210.    Upon information and belief, the University did not file an insurance claim in 1995 in connection with its alleged loss of the Artwork.

211.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1996.

212.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1996.

213.    Upon information and belief, the University did not file an insurance claim in 1996 in connection with its alleged loss of the Artwork.

214.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1997.

215.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1997.

216.    Upon information and belief, the University did not file an insurance claim in 1997 in connection with its alleged loss of the Artwork.

217.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1998.

218.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1998.

219.    Upon information and belief, the University did not file an insurance claim in 1998 in connection with its alleged loss of the Artwork.

220.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1999.

221.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1999.

222.    Upon information and belief, the University did not file an insurance claim in 1999 in connection with its alleged loss of the Artwork.

223.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2000.

224.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2000.

225.    Upon information and belief, the University did not an file insurance claim in 2000 in connection with its alleged loss of the Artwork.

226.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2001.

227.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2001.

228.    Upon information and belief, the University did not file an insurance claim in 2001 in connection with its alleged loss of the Artwork.

229.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2002.

230.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2002.

231.    Upon information and belief, the University did not file an insurance claim in 2002 in connection with its alleged loss of the Artwork.

232.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2003.

233.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2003.

234.    Upon information and belief, the University did not an file insurance claim in 2003 in connection with its alleged loss of the Artwork.

235.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2004.

236.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2004.

237.    Upon information and belief, the University did not an file insurance claim in 2004 in connection with its alleged loss of the Artwork.

238.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2005.

239.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2005.

240.    Upon information and belief, the University did not file an insurance claim in 2005 in connection with its alleged loss of the Artwork.

241.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2006.

242.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2006.

243.    Upon information and belief, the University did not file an insurance claim in 2006 in connection with its alleged loss of the Artwork.

244.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2007.

245.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2007.

246.    Upon information and belief, the University did not file an insurance claim in 2007 in connection with its alleged loss of the Artwork.

247.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2008.

248.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2008.

249.    Upon information and belief, the University did not file an insurance claim in 2008 in connection with its alleged loss of the Artwork.

250.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2009.

251.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2009.

252.    Upon information and belief, the University did not file an insurance claim in 2009 in connection with its alleged loss of the Artwork.

253.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2010.

254.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2010.

255.    Upon information and belief, the University did not file an insurance claim in 2010 in connection with its alleged loss of the Artwork.

256.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2011.

257.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2011.

258.    Upon information and belief, the University did not file an insurance claim in 2011 in connection with its alleged loss of the Artwork.

259.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2012.

260.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2012.

261.    Upon information and belief, the University did not file an insurance claim in 2012 in connection with its alleged loss of the Artwork.

262.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2013.

263.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2013.

264.    Upon information and belief, the University did not file an insurance claim in 2013 in connection with its alleged loss of the Artwork.

265.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2014.

266.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2014.

267.    Upon information and belief, the University did not file an insurance claim in 2014 in connection with its alleged loss of the Artwork.

28

268.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2015.

269.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2015.

270.    Upon information and belief, the University did not file an insurance claim in 2015 in connection with its alleged loss of the Artwork.

271.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2016.

272.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2016.

273.    Upon information and belief, the University did not file an insurance claim in 2016 in connection with its alleged loss of the Artwork.

274.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2017.

275.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2017.

276.    Upon information and belief, the University did not file an insurance claim in 2017 in connection with its alleged loss of the Artwork.

277.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2018.

278.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2018.

279.    Upon information and belief, the University did not file an insurance claim in 2018 in connection with its alleged loss of the Artwork.

280.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2019.

281.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2019.

282.    Upon information and belief, the University did not file an insurance claim in 2019 in connection with its alleged loss of the Artwork.

283.    Despite due demand from the Borders and their counsel, counsel for the University has not provided the Borders with proof of prior ownership of the Artwork.

284.    Despite due demand from the Borders and their counsel, counsel for the University has not provided the Borders with proof of theft of the Artwork.

285.    Given the University's inaction from the early 1970s through 2019, the only logical conclusion is that the University transferred ownership of the Artwork by the early 1970s and no longer has any claim to title to the Artwork.

### The University's Claims Lack Merit

#### *The Statute of Limitations for a Claim to*
#### *Recover Personal Property as Well as Laches Bar the University's Claim*

286.    Upon information and belief, the University discovered, or reasonably should have discovered, its alleged loss of the Artwork long ago, and in no event later than 1976, when it identified the Artwork as no longer being in its possession.

287.    Upon information and belief, the University was on notice of any alleged theft of the Artwork no later than 1976.

288.    The University failed to undertake reasonable diligence with respect to the Artwork.

289.    Upon information and belief, the University did not list the Artwork on a stolen art database prior to 2020.

290.    The University did not give notice to the Borders of its alleged claim to the Artwork until 2020.

291.    The University unreasonably delayed in asserting claim of title to the Artwork.

292.    The Artwork was acquired by the Borders more than 45 years ago.

293.    At the time of the Borders' acquisition of the Artwork, the Borders had no notice of the University's claim nor any other claim to the Artwork.

294.    The Borders have been prejudiced by the University's delay in asserting its alleged claim to the Artwork.

295.    The Borders' ability to defend against the University's threatened claims has been impaired by the passage of time during which the University failed to pursue its claims.

296.    Among other things, witnesses concerning the University's claim to the Artwork, including Charles White, have died and, upon information and belief, the memories of others with information that may bear on the University's claims have faded since the University knew or should have known of its claim.

297.    Upon information and belief, documents about the Artwork are no longer available as, among other things, the person that gifted the Artwork to the Borders has passed away.

298.    Upon information and belief, the University is no longer in possession of other artworks that were once its collection.

## FIRST COUNTERCLAIM FOR RELIEF
### DECLARATORY JUDGMENT UNDER 28 U.S.C. §§ 2201 and 2202

299.    The Borders repeat and reallege the allegations set forth in Paragraphs 92 through 298 above as though fully set forth herein.

300.    Pursuant to 28 U.S.C. § 2201, this Court has authority to decide actual controversies within its jurisdiction.

301.    There is an actual controversy between the Borders and the University.

302.    The Borders are the rightful owners of the Artwork.

303.    The University does not have good title to the Artwork, yet claims good title.

304.    The University is barred by the statute of limitations from asserting good title to the Artwork.

305.    The University is barred by the doctrine of laches from asserting good title because its unreasonable delay and the resulting prejudice to the Borders equitably precludes the University from claiming ownership of the Artwork.

306.    An actual controversy exists between the Borders, on the one hand, and the University, on the other, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

307.    Accordingly, the Borders respectfully request that this Court enter judgment declaring that the Borders have proper right, title, and interest in and to the Artwork.

## SECOND COUNTERCLAIM FOR RELIEF
### SLANDER OF TITLE

308.    The Borders repeat and reallege the allegations set forth in Paragraphs 92 through 307 as though fully set forth herein.

309.    Upon information and belief, communications by the University or its representatives concerning the Artwork with Sotheby's disparaged the Borders' title to the Artwork by claiming that the University is its true and rightful owner.

310.    Upon information and belief, such communications and inquiries have cast doubt on the Borders' ownership of the Artwork, damaging the value and/or salability of the Artwork.

311.    The University's claims have directly resulted in Sotheby's withdrawing the Artwork from its intended sale, meaning that the Artwork will no longer be "fresh" to the market if it is subsequently sold, and the sale price it can achieve will be lower as a result.

312.    The University's false accusations have also caused damage to the Borders' otherwise unimpeachable reputation in their community.

313.    The Borders have accordingly suffered special damages, in amount to be determined at trial, but in no event totaling less than One Hundred Thousand Dollars ($100,000.00) due to the University's false allegations.

314.    The University's claims are motivated by malice because, upon information and belief, the University knows that any claims the University may have allegedly had in or to the Artwork have long been extinguished.

315.    Alternatively, the University's claims are motivated by malice because, upon information and belief, the University has pursued its claim to the Artwork despite a high degree of awareness of the probable falsity of its claims.

**THIRD CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE WITH CONTRACT**

316.     The Borders repeat and reallege the allegations set forth in Paragraphs 92 through 315 as though fully set forth herein.

317.     The Borders entered into a valid contract with third-party Sotheby's regarding the Borders' consignment of the Artwork to Sotheby's for sale at auction.

318.     The University had knowledge of the contract between the Borders and Sotheby's, as alleged by the University in ¶ 58 of its Complaint.

319.     Without justification, the University intentionally procured Sotheby's breach of its contract with the Borders when it communicated to Sotheby's that the Artwork had gone missing from its collection and that the University still owned the Artwork when, upon information and belief, the University knew that any claims it may have allegedly had in or to the Artwork have long been extinguished, or despite a high degree of awareness of the probable falsity of its claims.

320.     As a direct result of the University's communications to Sotheby's that the Artwork had gone missing from its collection and that the University still owned the Artwork, Sotheby's withdrew the Artwork from its intended sale.

321.     The Borders have been damaged by the University's intentional procurement of Sotheby's breach of its contract with the Borders because, now that the Artwork has been withdrawn from its intended sale, the Artwork will no longer be "fresh" to the market if it is subsequently sold, and the sale price it can achieve will be lower as a result.

322.     The Borders have been damaged by the University's intentional procurement of Sotheby's breach of its contract with the Borders because, now that the Artworks has been

34

withdrawn from its intended sale, the Borders' otherwise unimpeachable reputation in their community has been tarnished.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Borders demand judgment as follows:

A.      Dismissing the University's Complaint;

B.      On their First Counterclaim, a declaration that the Borders have good, marketable title to the Artwork, free and clear from any claims of the University;

C.      On their Second Counterclaim, compensatory and punitive damages in an amount to be proven at trial, which shall be well in excess of the jurisdictional minimum, plus interest;

D.      On their Third Counterclaim, compensatory and punitive damages in an amount to be proven at trial, which shall be well in excess of the jurisdictional minimum, plus interest; *and*

E.      Awarding the Borders such other or further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b), the Borders demand a trial by jury.

Dated:  New York, New York
        2020-June-22

OLSOFF | CAHILL | COSSU LLP

By:         */s/ Paul S. Cossu*
            Paul S. Cossu
            John R. Cahill
            Jonathan A. Olsoff
            1285 Avenue of the Americas
            New York, New York 10019
            212-719-4400

            *Attorneys for*
            *Larry Border and Virginia Border*

36