## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

HOWARD UNIVERSITY,

           Plaintiff-Counterclaim Defendant,

   -against-

LARRY BORDERS and
VIRGINIA BORDERS,

           Defendants-Counterclaim
           Plaintiffs,

and

*CENTRALIA MADONNA*,
a DRAWING,

           Defendant-in-rem.

Civil Action No.:

1:20-cv-4716 (LJL)

### HOWARD UNIVERSITY'S ANSWER TO DEFENDANTS-COUNTERCLAIM PLAINTIFFS' COUNTERCLAIM

    Plaintiff-Counterclaim Defendant Howard University ("Howard University" or "the University"), by and through its undersigned counsel, hereby replies to each paragraph of the Counterclaim[1] filed by Defendants-Counterclaim Plaintiffs Larry and Virginia Borders ("Defendants") as follows:

### COUNTERCLAIMS[2]

    92.    These counterclaims seek a declaratory judgment and damages for slander of title and tortious interference arising out of the University's wrongful claims that it holds an interest in the Artwork that is superior to the Borders and that the Borders have been dishonest.

---

[1] Defendants initially filed three counterclaims, and Howard University filed a motion to dismiss Defendants' Second and Third Counterclaims. (*See* D.I. 13-14.) Shortly thereafter, Defendants voluntarily dismissed their Second and Third Counterclaims. (*See* D.I. 16.) As a result, this Answer responds only to Defendants' First Counterclaim, which is their only remaining claim for relief.

[2] Certain headings and sub-headings used in the Counterclaim are restated here and below for ease of reference, but no admissions are made thereby as the headings are not allegations requiring an answer. Howard University denies all allegations that it does not expressly admit.

**Answer to Paragraph No. 92:** Howard University admits that Defendants have filed a

counterclaim seeking a declaratory judgment but denies that Defendants are entitled to

such relief.  Howard University admits that Defendants originally filed two additional

counterclaims for slander of title and tortious interference, and that Defendants have

since voluntarily dismissed those counterclaims.

93.     The Borders are an elderly African-American couple that have lived with, and
loved, the Charles White Artwork for nearly all of the almost 50 years of their marriage. For over
four decades, the Borders cherished the Artwork, took it with them when they moved homes, and
never realized that it had any significant monetary value.

**Answer to Paragraph No. 93:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 93, and

therefore denies these allegations.

94.     The Borders were shocked to learn of the University's claims. In good faith, the
Borders joined a telephone call with the University's lawyers—without the representation of
counsel or receiving any advice to retain counsel—in which the Borders gave their best estimate
of when they received the Artwork, what they recalled about the gift-giver, and corrected the
University's lawyers' alleged misapprehension that the Artwork was a wedding gift, because it
was not.

**Answer to Paragraph No. 94:** Howard University admits that certain of its employees

participated in a telephone call with Sotheby's and Defendants at Sotheby's request, and

admits that on that call Defendants contradicted their earlier representations to Sotheby's,

which Sotheby's communicated to the University by email, that Defendants had received

the Artwork as a wedding gift in 1972.  Howard University lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph 94, and therefore denies these allegations.

95.     The Borders have never changed that story as the University's Complaint falsely
alleges.

**Answer to Paragraph No. 95:** Denied.

2

11888944

96.     When asked for any documentation of the University's acquisition or possession of the Artwork, the University refused to provide any, or even to discuss the documentary basis of its claims, if any, by telephone.

**Answer to Paragraph No. 96:** Howard University admits that Defendants requested pre-litigation discovery, admits that the University declined to provide pre-litigation discovery, and admits that the University has filed a sworn Complaint establishing and substantiating its ownership of the Artwork and its superior claim of title to the Artwork. Howard University denies the remaining allegations in Paragraph 96.

97.     The University instead filed this lawsuit in bad faith.

**Answer to Paragraph No. 97:** Denied.

98.     Based on the limited information that the Borders have been able to ascertain from the Complaint, it appears that for approximately 45 years, the University knew that the Artwork was no longer in its possession and did not know where it was.

**Answer to Paragraph No. 98:** Denied.

99.     Neither in 1976, when it—via the University Art Gallery's Director—first acknowledged not knowing the location of the Artwork in writing, or thereafter did the University take any steps to publicly identify it as stolen.

**Answer to Paragraph No. 99:** Denied.

100.    Charles White was a Distinguished Professor at the University during part of the period of time when the Artwork was no longer in the University's possession.

**Answer to Paragraph No. 100:** Howard University lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 100, and therefore denies these allegations.

101.    Neither Mr. White nor the University raised any concerns about the fact that the Artwork was no longer at the University.

**Answer to Paragraph No. 101:** Denied.

102.    The University did not consider the Artwork to be owned by the University until the occasion arose in 2020 for it to claim ownership over a "highly valuable" Artwork.

3

**Answer to Paragraph No. 102:** Denied.

## PARTIES AND JURISDICTION

103.    Counterclaim-Plaintiff Larry Borders is an individual residing in North Carolina.

**Answer to Paragraph No. 103:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 103,

and therefore denies these allegations.

104.    Counterclaim-Plaintiff Virginia Borders is an individual residing in North

Carolina.

**Answer to Paragraph No. 104:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 104,

and therefore denies these allegations.

105.    Counterclaim-Defendant Howard University is, upon information and belief, is a

corporation with a principal place of business in Washington, D.C.

**Answer to Paragraph No. 105:** Admitted.

106.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C §

1332, due to the complete diversity of the parties and because the amount in controversy exceeds

$75,000.

**Answer to Paragraph No. 106:** Paragraph 106 sets forth legal contentions to which no

response is required.

107.    This Court has personal jurisdiction over the University as it has purposefully

availed itself of the New York State court system and has committed tortious acts in the State of

New York.

**Answer to Paragraph No. 107:** Paragraph 107 sets forth legal contentions to which no

response is required.

108.    Venue is proper in this District pursuant to 28 U.S.C § 1391 because a substantial

part of the acts that gave rise to the present dispute occurred in the Southern District of New

York.

**Answer to Paragraph No. 108:** Paragraph 108 sets forth legal contentions to which no

4

11888944

response is required.

## FACTUAL ALLEGATIONS

109.    Larry and Virginia Borders were married in 1971.

**Answer to Paragraph No. 109:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 109,

and therefore denies these allegations.

110.    Mr. Borders worked at IBM for many years.

**Answer to Paragraph No. 110:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 110,

and therefore denies these allegations.

111.    As part of his work for IBM, Mr. Borders was sent to New York, Paris, and other
locations.

**Answer to Paragraph No. 111:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 111,

and therefore denies these allegations.

112.    Mr. Borders retired from IBM in 2011.

**Answer to Paragraph No. 112:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 112,

and therefore denies these allegations.

113.    For the last decade since his retirement, Mr. Borders has been active in his local
community in supporting and promoting small businesses and entrepreneurial enterprises that are
owned or managed by persons of color.

**Answer to Paragraph No. 113:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 113,

and therefore denies these allegations.

11888944

114.    Mr. Borders heads several nonprofits in his local community.

**Answer to Paragraph No. 114:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 114,

and therefore denies these allegations.

115.    In the early 1970s, a friend of the Borders, J.D. Kibler, gifted the Artwork to the Borders.

**Answer to Paragraph No. 115:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 115,

and therefore denies these allegations.

116.    Upon information and belief, for a period of time in the 1970s, Mr. Kibler was the President of the South Carolina Counseling Association, the state branch of the American Counseling Association.

**Answer to Paragraph No. 116:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 116,

and therefore denies these allegations.

117.    At the time of the gift, the Borders had no reason to believe that the Artwork was particularly valuable.

**Answer to Paragraph No. 117:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 117,

and therefore denies these allegations.

118.    The Artwork was accompanied by another gift of artwork, which was not then and is not now particularly valuable.

**Answer to Paragraph No. 118:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 118,

and therefore denies these allegations.

119.    The Borders kept the Artwork on their walls, despite moving several times, from the 1970s until recently when, after seeing the value of artworks by Charles White on Antiques

Roadshow, they decided to sell the Artwork.

**Answer to Paragraph No. 119:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 119,

and therefore denies these allegations.

120.   Having no reason to believe that there were any ownership issues with the Artwork, the Borders consigned that Artwork to Sotheby's for sale at public auction.

**Answer to Paragraph No. 120:** Howard University admits that the Borders attempted to

consign the Artwork to Sotheby's for sale at public auction but otherwise denies the

allegations in Paragraph 120.

121.   Having no reason to believe that there were any ownership issues with the Artwork, the Borders authorized Sotheby's to contact experts and other third parties concerning the authenticity and provenance of the Artwork.

**Answer to Paragraph No. 121:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 121,

and therefore denies these allegations.

122.   Prior to the planned sale of the Artwork, the Borders were informed by Sotheby's that the University had claimed that the Artwork had gone missing from its collection and that the University was claiming to still own the Artwork.

**Answer to Paragraph No. 122:** Howard University admits that Howard University owns

the Artwork, admits that the Artwork was removed without authorization from the

University's collection, and admits that the University communicated those facts to

Sotheby's prior to the planned sale of the Artwork.  Howard University lacks knowledge

or information sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph 122, and therefore denies these allegations.

123.   Because the Borders had no reason to believe that anything untoward had taken place with the Artwork before it was gifted to them nearly 50 years ago, the Borders provided all the information that they had about the Artwork to Sotheby's, so that it could be provided to the University.

11888944

**Answer to Paragraph No. 123:** Howard University lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 123, and therefore denies these allegations.

124. Sotheby's then advised the Borders that the University wanted to have a call with the Borders to get more information about how the Borders came to possess the Artwork.

**Answer to Paragraph No. 124:** Howard University denies that it initiated or requested a call with Defendants but admits that it participated on a call with Sotheby's and Defendants at Sotheby's request.  Howard University lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 124, and therefore denies these allegations.

125. Because the Borders had nothing to hide, they agreed to have a call with the University.

**Answer to Paragraph No. 125:** Howard University lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 125, and therefore denies these allegations.

126. On or about June 1, 2020, the Borders participated in a conference call with the University and Sotheby's.

**Answer to Paragraph No. 126:** Howard University admits that, at Sotheby's request, certain University employees participated on a call with Sotheby's and Defendants on June 1, 2020.

127. The University had several representatives on the call, including its General Counsel, Florence Prioleau, and its Senior Counsel, Lisa Jones Gentry.

**Answer to Paragraph No. 127:** Admitted.

128. The Borders participated in the call without legal counsel.

**Answer to Paragraph No. 128:** Howard University admits that it participated on a call with Sotheby's and Defendants at Sotheby's request.  Howard University lacks

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 128, and therefore denies these allegations.

129.    The Borders participated in the call without legal counsel because they believed the call to be a good-faith attempt by all parties to get more background on the Artwork.

**Answer to Paragraph No. 129:** Howard University admits that it participated on a call

with Sotheby's and Defendants at Sotheby's request.  Howard University lacks

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 129, and therefore denies these allegations.

130.    The Borders were entirely forthcoming on the call, and even corrected the University's alleged misapprehension that the Artwork had been a wedding gift by noting that the Artwork had been given to them some time after their wedding, but that they never understood it to be a wedding gift.

**Answer to Paragraph No. 130:** Howard University admits that on the June 1, 2020 call,

Defendants contradicted their earlier representations to Sotheby's, which Sotheby's

communicated to the University by email, that Defendants had received the Artwork as a

wedding gift in 1972.  Howard University lacks knowledge or information sufficient to

form a belief as to the truth of the remaining allegations contained in Paragraph 130, and

therefore denies these allegations.

131.    By contrast, the University, via Ms. Jones Gentry and Ms. Prioleau, withheld information from the Borders concerning the lack of documentation that the University has to support its claims to ownership of the Artwork.

**Answer to Paragraph No. 131:** Denied.

132.    Further, neither Ms. Jones Gentry nor Ms. Prioleau advised the Borders to obtain legal counsel, despite their using the conference call to threaten to call the FBI if the University's ownership of the Artwork was not accepted.

**Answer to Paragraph No. 132:** Howard University admits that its employees who

participated on the June 1, 2020 call with Defendants and Sotheby's did not provide legal

advice to Defendants, denies that those employees were under any obligation to do so,

and denies the remaining allegations in Paragraph 132.

133.    In light of the University's demand for the Artwork to be returned, the Borders' retained counsel in June 2020.

**Answer to Paragraph No. 133:** Howard University admits that it made a demand for the Artwork to be returned, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 133, and therefore denies these allegations.

134.    Several requests were then made to Ms. Jones Gentry for the University to provide the documentation that it claimed supported its ownership of the Artwork.

**Answer to Paragraph No. 134:** Howard University admits that outside counsel for Defendants attempted to obtain pre-litigation discovery from the University, and that the University declined to provide such pre-litigation discovery.

135.    Ms. Jones Gentry refused to provide such documentation.

**Answer to Paragraph No. 135:** Howard University admits that outside counsel for Defendants attempted to obtain pre-litigation discovery from the University, and that the University declined to provide such pre-litigation discovery.

136.    Rather, Ms. Jones Gentry demanded that the Borders accept the University's ownership assertion at face value.

**Answer to Paragraph No. 136:** Howard University admits that it conveyed to Defendants and Defendants' counsel that Howard University is the rightful owner of the Artwork, and admits that the University demanded that Defendants return the Artwork to the University, but denies the remaining allegations in Paragraph 136.

137.    Unable, or unwilling, to produce any evidence of its ownership of the Artwork, the University filed its Complaint without any advance notice to the Borders, despite what appears to be a decades-long course of conduct in which the University knew that the Artwork was no longer in its possession and, yet, did not treat the Artwork as stolen or missing.

**Answer to Paragraph No. 137:** Howard University admits that it filed the Complaint in

the above-captioned action on June 19, 2020 after Defendants refused to comply with the

University's timely demands that Defendants return the Artwork to the University.

Howard University denies the remaining allegations in Paragraph 137.

### The University's Lack of Evidence and Its Pursuit of Its Alleged Claim

138.    Upon information and belief, the University possesses no bill of sale or invoice for the Artwork.

**Answer to Paragraph No. 138:** Howard University admits that its ownership of the

Artwork is established by, among other things, the 1947-1948 Howard University Annual

Reports of the College of Liberal Arts reflecting that the Artwork was acquired by the

University during that academic year, Howard's internal records reflecting that the

University purchased the Artwork, and the Master's thesis of the current Assistant

Director of the Gallery, in connection with which the Assistant Director personally

viewed and documented the Artwork as part of a catalogue of the University Gallery's

collection of works created by Black artists.  Howard University admits that Defendants'

own agent, Sotheby's, independently verified the University's ownership and acquisition

of the Artwork.  Howard University admits that the University's ownership and

acquisition of the Artwork was further memorialized in a 1947 Washington Post article.

Howard University admits that it has not yet identified in its possession an invoice or bill

of sale for the University's purchase of the Artwork in 1947.

139.    As alleged by the Complaint (¶ 13), the Artwork is an "incredibly important piece of art by a renowned artist who made an indelible impact on the University."

**Answer to Paragraph No. 139:** Admitted.

140.    A large number of owners of valuable artworks purchase insurance to cover loss or damage to their artworks.

**Answer to Paragraph No. 140:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 140,

and therefore denies these allegations.

141.    At all times during which the University claims to have owned the Artwork, insurance covering loss or damage to fine art like the Artwork was available for purchase.

**Answer to Paragraph No. 141:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 141,

and therefore denies these allegations.

142.    Upon information and belief, the University possesses no records reflecting that it insured this "incredibly important" Artwork.

**Answer to Paragraph No. 142:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 142,

and therefore denies these allegations.

143.    As alleged by the Complaint (¶ 53), no later than 1976, the University knew that it was no longer in possession of the Artwork.

**Answer to Paragraph No. 143:** Denied.

144.    Upon information and belief, the University did little or nothing to pursue the alleged theft of this "incredibly important" Artwork after learning the Artwork was no longer in its possession no later than 1976.

**Answer to Paragraph No. 144:** Denied.

145.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1976.

**Answer to Paragraph No. 145:** Admitted.

146.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1976.

**Answer to Paragraph No. 146:** Admitted.

147.    Upon information and belief, the University did not file an insurance claim in 1976 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 147:** Admitted.

148.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1977.

**Answer to Paragraph No. 148:** Admitted.

149.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1977.

**Answer to Paragraph No. 149:** Admitted.

150.    Upon information and belief, the University did not file an insurance claim in 1977 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 150:** Admitted.

151.    As alleged by the Complaint (¶ 36), Charles White was named a Distinguished Professor of the University in 1978.

**Answer to Paragraph No. 151:** Admitted.

152.    Upon information and belief, the University did not inform Charles White that the Artwork had been stolen.

**Answer to Paragraph No. 152:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 152,

and therefore denies these allegations.

153.    Upon information and belief, the University did not inform Charles White that the Artwork had been lost.

**Answer to Paragraph No. 153:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 153,

and therefore denies these allegations.

154.    Upon information and belief, the University did not inform Charles White that the Artwork had been removed from the University without authorization.

**Answer to Paragraph No. 154:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 154,

and therefore denies these allegations.

155.    Upon information and belief, the University did not inform Charles White that the Artwork had been loaned.

**Answer to Paragraph No. 155:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 155,

and therefore denies these allegations.

156.    Upon information and belief, Charles White never raised any concern that the Artwork was not at the University while he was a Distinguished Professor.

**Answer to Paragraph No. 156:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 156,

and therefore denies these allegations.

157.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1978.

**Answer to Paragraph No. 157:** Admitted.

158.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1978.

**Answer to Paragraph No. 158:** Admitted.

159.    Upon information and belief, the University did not file an insurance claim in 1978 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 159:** Admitted.

160.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1979.

**Answer to Paragraph No. 160:** Admitted.

161.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1979.

**Answer to Paragraph No. 161:** Admitted.

162.    Upon information and belief, the University did not file an insurance claim in 1979 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 162:** Admitted.

14

11888944

163.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1980.

**Answer to Paragraph No. 163:** Admitted.

164.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1980.

**Answer to Paragraph No. 164:** Admitted.

165.    Upon information and belief, the University did not file an insurance claim in 1980 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 165:** Admitted.

166.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1981.

**Answer to Paragraph No. 166:** Admitted.

167.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1981.

**Answer to Paragraph No. 167:** Admitted.

168.    Upon information and belief, the University did not file an insurance claim in 1981 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 168:** Admitted.

169.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1982.

**Answer to Paragraph No. 169:** Admitted.

170.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1982.

**Answer to Paragraph No. 170:** Admitted.

171.    Upon information and belief, the University did not file an insurance claim in 1982 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 171:** Admitted.

172.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1983.

11888944

**Answer to Paragraph No. 172:** Admitted.

173.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1983.

**Answer to Paragraph No. 173:** Admitted.

174.    Upon information and belief, the University did not file an insurance claim in 1983 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 174:** Admitted.

175.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1984.

**Answer to Paragraph No. 175:** Admitted.

176.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1984.

**Answer to Paragraph No. 176:** Admitted.

177.    Upon information and belief, the University did not file an insurance claim in 1984 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 177:** Admitted.

178.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1985.

**Answer to Paragraph No. 178:** Admitted.

179.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1985.

**Answer to Paragraph No. 179:** Admitted.

180.    Upon information and belief, the University did not file an insurance claim in 1985 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 180:** Admitted.

181.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1986.

**Answer to Paragraph No. 181:** Admitted.

182.    Upon information and belief, the University did not register the Artwork as

11888944

missing or stolen in 1986.

**Answer to Paragraph No. 182:** Admitted.

183.    Upon information and belief, the University did not file an insurance claim in 1986 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 183:** Admitted.

184.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1987.

**Answer to Paragraph No. 184:** Admitted.

185.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1987.

**Answer to Paragraph No. 185:** Admitted.

186.    Upon information and belief, the University did not file an insurance claim in 1987 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 186:** Admitted.

187.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1988.

**Answer to Paragraph No. 187:** Admitted.

188.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1988.

**Answer to Paragraph No. 188:** Admitted.

189.    Upon information and belief, the University did not file an insurance claim in 1988 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 189:** Admitted.

190.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1989.

**Answer to Paragraph No. 190:** Admitted.

191.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1989.

**Answer to Paragraph No. 191:** Admitted.

192.    Upon information and belief, the University did not file an insurance claim in 1989 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 192:** Admitted.

193.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1990.

**Answer to Paragraph No. 193:** Admitted.

194.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1990.

**Answer to Paragraph No. 194:** Admitted.

195.    Upon information and belief, the University did not file an insurance claim in 1990 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 195:** Admitted.

196.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1991.

**Answer to Paragraph No. 196:** Admitted.

197.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1991.

**Answer to Paragraph No. 197:** Admitted.

198.    Upon information and belief, the University did not file an insurance claim in 1991 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 198:** Admitted.

199.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1992.

**Answer to Paragraph No. 199:** Admitted.

200.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1992.

**Answer to Paragraph No. 200:** Admitted.

201.    Upon information and belief, the University did not file an insurance claim in 1992 in connection with its alleged loss of the Artwork.

11888944

**Answer to Paragraph No. 201:** Admitted.

202.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1993.

**Answer to Paragraph No. 202:** Admitted.

203.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1993.

**Answer to Paragraph No. 203:** Admitted.

204.    Upon information and belief, the University did not file an insurance claim in 1993 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 204:** Admitted.

205.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1994.

**Answer to Paragraph No. 205:** Admitted.

206.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1994.

**Answer to Paragraph No. 206:** Admitted.

207.    Upon information and belief, the University did not file an insurance claim in 1994 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 207:** Admitted.

208.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1995.

**Answer to Paragraph No. 208:** Admitted.

209.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1995.

**Answer to Paragraph No. 209:** Admitted.

210.    Upon information and belief, the University did not file an insurance claim in 1995 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 210:** Admitted.

211.    Upon information and belief, the University did not report the Artwork as missing

or stolen to law enforcement in 1996.

**Answer to Paragraph No. 211:** Admitted.

212.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1996.

**Answer to Paragraph No. 212:** Admitted.

213.    Upon information and belief, the University did not file an insurance claim in 1996 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 213:** Admitted.

214.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1997.

**Answer to Paragraph No. 214:** Admitted.

215.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1997.

**Answer to Paragraph No. 215:** Admitted.

216.    Upon information and belief, the University did not file an insurance claim in 1997 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 216:** Admitted.

217.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1998.

**Answer to Paragraph No. 217:** Admitted.

218.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1998.

**Answer to Paragraph No. 218:** Admitted.

219.    Upon information and belief, the University did not file an insurance claim in 1998 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 219:** Admitted.

220.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 1999.

**Answer to Paragraph No. 220:** Admitted.

11888944

221.    Upon information and belief, the University did not register the Artwork as missing or stolen in 1999.

**Answer to Paragraph No. 221:** Admitted.

222.    Upon information and belief, the University did not file an insurance claim in 1999 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 222:** Admitted.

223.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2000.

**Answer to Paragraph No. 223:** Admitted.

224.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2000.

**Answer to Paragraph No. 224:** Admitted.

225.    Upon information and belief, the University did not file an insurance claim in 2000 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 225:** Admitted.

226.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2001.

**Answer to Paragraph No. 226:** Admitted.

227.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2001.

**Answer to Paragraph No. 227:** Admitted.

228.    Upon information and belief, the University did not file an insurance claim in 2001 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 228:** Admitted.

229.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2002.

**Answer to Paragraph No. 229:** Admitted.

230.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2002.

**Answer to Paragraph No. 230:** Admitted.

231.    Upon information and belief, the University did not file an insurance claim in 2002 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 231:** Admitted.

232.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2003.

**Answer to Paragraph No. 232:** Admitted.

233.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2003.

**Answer to Paragraph No. 233:** Admitted.

234.    Upon information and belief, the University did not file an insurance claim in 2003 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 234:** Admitted.

235.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2004.

**Answer to Paragraph No. 235:** Admitted.

236.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2004.

**Answer to Paragraph No. 236:** Admitted.

237.    Upon information and belief, the University did not an file insurance claim in 2004 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 237:** Admitted.

238.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2005.

**Answer to Paragraph No. 238:** Admitted.

239.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2005.

**Answer to Paragraph No. 239:** Admitted.

240.    Upon information and belief, the University did not file an insurance claim in

11888944

2005 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 240:** Admitted.

241.     Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2006.

**Answer to Paragraph No. 241:** Admitted.

242.     Upon information and belief, the University did not register the Artwork as missing or stolen in 2006.

**Answer to Paragraph No. 242:** Admitted.

243.     Upon information and belief, the University did not file an insurance claim in 2006 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 243:** Admitted.

244.     Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2007.

**Answer to Paragraph No. 244:** Admitted.

245.     Upon information and belief, the University did not register the Artwork as missing or stolen in 2007.

**Answer to Paragraph No. 245:** Admitted.

246.     Upon information and belief, the University did not file an insurance claim in 2007 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 246:** Admitted.

247.     Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2008.

**Answer to Paragraph No. 247:** Admitted.

248.     Upon information and belief, the University did not register the Artwork as missing or stolen in 2008.

**Answer to Paragraph No. 248:** Admitted.

249.     Upon information and belief, the University did not file an insurance claim in 2008 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 249:** Admitted.

23

250.     Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2009.

**Answer to Paragraph No. 250:** Admitted.

251.     Upon information and belief, the University did not register the Artwork as missing or stolen in 2009.

**Answer to Paragraph No. 251:** Admitted.

252.     Upon information and belief, the University did not file an insurance claim in 2009 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 252:** Admitted.

253.     Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2010.

**Answer to Paragraph No. 253:** Admitted.

254.     Upon information and belief, the University did not register the Artwork as missing or stolen in 2010.

**Answer to Paragraph No. 254:** Admitted.

255.     Upon information and belief, the University did not file an insurance claim in 2010 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 255:** Admitted.

256.     Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2011.

**Answer to Paragraph No. 256:** Admitted.

257.     Upon information and belief, the University did not register the Artwork as missing or stolen in 2011.

**Answer to Paragraph No. 257:** Admitted.

258.     Upon information and belief, the University did not file an insurance claim in 2011 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 258:** Admitted.

259.     Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2012.

24

**Answer to Paragraph No. 259:** Admitted.

260.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2012.

**Answer to Paragraph No. 260:** Admitted.

261.    Upon information and belief, the University did not file an insurance claim in 2012 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 261:** Admitted.

262.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2013.

**Answer to Paragraph No. 262:** Admitted.

263.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2013.

**Answer to Paragraph No. 263:** Admitted.

264.    Upon information and belief, the University did not file an insurance claim in 2013 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 264:** Admitted.

265.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2014.

**Answer to Paragraph No. 265:** Admitted.

266.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2014.

**Answer to Paragraph No. 266:** Admitted.

267.    Upon information and belief, the University did not file an insurance claim in 2014 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 267:** Admitted.

268.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2015.

**Answer to Paragraph No. 268:** Admitted.

269.    Upon information and belief, the University did not register the Artwork as

missing or stolen in 2015.

**Answer to Paragraph No. 269:** Admitted.

270.    Upon information and belief, the University did not file an insurance claim in 2015 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 270:** Admitted.

271.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2016.

**Answer to Paragraph No. 271:** Admitted.

272.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2016.

**Answer to Paragraph No. 272:** Admitted.

273.    Upon information and belief, the University did not file an insurance claim in 2016 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 273:** Admitted.

274.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2017.

**Answer to Paragraph No. 274:** Admitted.

275.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2017.

**Answer to Paragraph No. 275:** Admitted.

276.    Upon information and belief, the University did not file an insurance claim in 2017 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 276:** Admitted.

277.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2018.

**Answer to Paragraph No. 277:** Admitted.

278.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2018.

**Answer to Paragraph No. 278:** Admitted.

11888944

279.    Upon information and belief, the University did not file an insurance claim in 2018 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 279:** Admitted.

280.    Upon information and belief, the University did not report the Artwork as missing or stolen to law enforcement in 2019.

**Answer to Paragraph No. 280:** Admitted.

281.    Upon information and belief, the University did not register the Artwork as missing or stolen in 2019.

**Answer to Paragraph No. 281:** Admitted.

282.    Upon information and belief, the University did not file an insurance claim in 2019 in connection with its alleged loss of the Artwork.

**Answer to Paragraph No. 282:** Admitted.

283.    Despite due demand from the Borders and their counsel, counsel for the University has not provided the Borders with proof of prior ownership of the Artwork.

**Answer to Paragraph No. 283:** Howard University admits that Defendants' counsel requested pre-litigation discovery and pre-discovery document production, admits that the University declined to provide pre-litigation discovery or pre-discovery document production, and admits that the University has filed a sworn Complaint establishing and substantiating its ownership of the Artwork and its superior claim of title to the Artwork. Howard University denies the remaining allegations in Paragraph 283.

284.    Despite due demand from the Borders and their counsel, counsel for the University has not provided the Borders with proof of theft of the Artwork.

**Answer to Paragraph No. 284:** Howard University admits that Defendants' counsel requested pre-litigation discovery and pre-discovery document production, admits that the University declined to provide pre-litigation discovery or pre-discovery document production, and admits that the University has filed a sworn Complaint establishing and substantiating its ownership of the Artwork and its superior claim of title to the Artwork.

27

Howard University denies the remaining allegations in Paragraph 284.

285.    Given the University's inaction from the early 1970s through 2019, the only logical conclusion is that the University transferred ownership of the Artwork by the early 1970s and no longer has any claim to title to the Artwork.

**Answer to Paragraph No. 285:** Denied.

### The University's Claims Lack Merit

### The Statute of Limitations for a Claim to
### Recover Personal Property as Well as Laches Bar the University's Claim

286.    Upon information and belief, the University discovered, or reasonably should have discovered, its alleged loss of the Artwork long ago, and in no event later than 1976, when it identified the Artwork as no longer being in its possession.

**Answer to Paragraph No. 286:** Denied.

287.    Upon information and belief, the University was on notice of any alleged theft of the Artwork no later than 1976.

**Answer to Paragraph No. 287:** Denied.

288.    The University failed to undertake reasonable diligence with respect to the Artwork.

**Answer to Paragraph No. 288:** Denied.

289.    Upon information and belief, the University did not list the Artwork on a stolen art database prior to 2020.

**Answer to Paragraph No. 289:** Admitted.

290.    The University did not give notice to the Borders of its alleged claim to the Artwork until 2020.

**Answer to Paragraph No. 290:** Admitted.

291.    The University unreasonably delayed in asserting claim of title to the Artwork.

**Answer to Paragraph No. 291:** Denied.

292.    The Artwork was acquired by the Borders more than 45 years ago.

**Answer to Paragraph No. 292:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 292,

and therefore denies these allegations.

293.    At the time of the Borders' acquisition of the Artwork, the Borders had no notice of the University's claim nor any other claim to the Artwork.

**Answer to Paragraph No. 293:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 293,

and therefore denies these allegations.

294.    The Borders have been prejudiced by the University's delay in asserting its alleged claim to the Artwork.

**Answer to Paragraph No. 294:** Denied.

295.    The Borders' ability to defend against the University's threatened claims has been impaired by the passage of time during which the University failed to pursue its claims.

**Answer to Paragraph No. 295:** Denied.

296.    Among other things, witnesses concerning the University's claim to the Artwork, including Charles White, have died and, upon information and belief, the memories of others with information that may bear on the University's claims have faded since the University knew or should have known of its claim.

**Answer to Paragraph No. 296:** Howard University admits that Charles White is no

longer living but denies the remaining allegations in Paragraph 296.

297.    Upon information and belief, documents about the Artwork are no longer available as, among other things, the person that gifted the Artwork to the Borders has passed away.

**Answer to Paragraph No. 297:** Howard University lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 297,

and therefore denies these allegations.

298.    Upon information and belief, the University is no longer in possession of other artworks that were once its collection.

**Answer to Paragraph No. 298:** Admitted.

**FIRST COUNTERCLAIM FOR RELIEF**
**DECLARATORY JUDGMENT UNDER 28 U.S.C. §§ 2201 AND 2202**

29

299.    The Borders repeat and reallege the allegations set forth in Paragraphs 92 through 298 above as though fully set forth herein.

**Answer to Paragraph No. 299:** Howard University repeats and realleges each and every response contained in Paragraphs 92 through 298 of the Answer as if fully set forth herein.

300.    Pursuant to 28 U.S.C. § 2201, this Court has authority to decide actual controversies within its jurisdiction.

**Answer to Paragraph No. 300:** Paragraph 300 sets forth legal contentions to which no response is required.

301.    There is an actual controversy between the Borders and the University.

**Answer to Paragraph No. 301:** Admitted.

302.    The Borders are the rightful owners of the Artwork.

**Answer to Paragraph No. 302:** Denied.

303.    The University does not have good title to the Artwork, yet claims good title.

**Answer to Paragraph No. 303:** Howard admits that it claims good title to the Artwork, but otherwise denies the allegations in Paragraph 303.

304.    The University is barred by the statute of limitations from asserting good title to the Artwork.

**Answer to Paragraph No. 304:** Denied.

305.    The University is barred by the doctrine of laches from asserting good title because its unreasonable delay and the resulting prejudice to the Borders equitably precludes the University from claiming ownership of the Artwork.

**Answer to Paragraph No. 305:** Denied.

306.    An actual controversy exists between the Borders, on the one hand, and the University, on the other, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

**Answer to Paragraph No. 306:** Paragraph 306 sets forth legal contentions to which no

response is required.

307.     Accordingly, the Borders respectfully request that this Court enter judgment declaring that the Borders have proper right, title, and interest in and to the Artwork.

**Answer to Paragraph No. 307:** Howard University admits that Defendants have

requested a declaratory judgment declaring their rights as to the Artwork but denies that

Defendants are entitled to the relief they seek.

## SECOND COUNTERCLAIM FOR RELIEF
## SLANDER OF TITLE

308.     The Borders repeat and reallege the allegations set forth in Paragraphs 92 through 307 as though fully set forth herein.

**Answer to Paragraph No. 308:** Howard University repeats and realleges each and every

response contained in Paragraphs 92 through 307 of the Answer as if fully set forth

herein.

309.     Upon information and belief, communications by the University or its representatives concerning the Artwork with Sotheby's disparaged the Borders' title to the Artwork by claiming that the University is its true and rightful owner.

**Answer to Paragraph No. 309:** Because Defendants have since voluntarily dismissed

their Second Counterclaim (D.I. 16), no response to these allegations is required.

310.     Upon information and belief, such communications and inquiries have cast doubt on the Borders' ownership of the Artwork, damaging the value and/or salability of the Artwork.

**Answer to Paragraph No. 310:** Because Defendants have since voluntarily dismissed

their Second Counterclaim (D.I. 16), no response to these allegations is required.

311.     The University's claims have directly resulted in Sotheby's withdrawing the Artwork from its intended sale, meaning that the Artwork will no longer be "fresh" to the market if it is subsequently sold, and the sale price it can achieve will be lower as a result.

**Answer to Paragraph No. 311:** Because Defendants have since voluntarily dismissed

their Second Counterclaim (D.I. 16), no response to these allegations is required.

312.     The University's false accusations have also caused damage to the Borders'

otherwise unimpeachable reputation in their community.

**Answer to Paragraph No. 312:** Because Defendants have since voluntarily dismissed

their Second Counterclaim (D.I. 16), no response to these allegations is required.

313.    The Borders have accordingly suffered special damages, in amount to be
determined at trial, but in no event totaling less than One Hundred Thousand Dollars
($100,000.00) due to the University's false allegations.

**Answer to Paragraph No. 313:** Because Defendants have since voluntarily dismissed

their Second Counterclaim (D.I. 16), no response to these allegations is required.

314.    The University's claims are motivated by malice because, upon information and
belief, the University knows that any claims the University may have allegedly had in or to the
Artwork have long been extinguished.

**Answer to Paragraph No. 314:** Because Defendants have since voluntarily dismissed

their Second Counterclaim (D.I. 16), no response to these allegations is required.

315.    Alternatively, the University's claims are motivated by malice because, upon
information and belief, the University has pursued its claim to the Artwork despite a high degree
of awareness of the probable falsity of its claims.

**Answer to Paragraph No. 315:** Because Defendants have since voluntarily dismissed

their Second Counterclaim (D.I. 16), no response to these allegations is required.

**THIRD CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE WITH CONTRACT**

316.    The Borders repeat and reallege the allegations set forth in Paragraphs 92 through
315 as though fully set forth herein.

**Answer to Paragraph No. 316:** Howard University repeats and realleges each and every

response contained in Paragraphs 92 through 315 of the Answer as if fully set forth

herein.

317.    The Borders entered into a valid contract with third-party Sotheby's regarding the
Borders' consignment of the Artwork to Sotheby's for sale at auction.

**Answer to Paragraph No. 317:** Because Defendants have since voluntarily dismissed

their Third Counterclaim (D.I. 16), no response to these allegations is required.

32

318.    The University had knowledge of the contract between the Borders and Sotheby's, as alleged by the University in ¶ 58 of its Complaint.

**Answer to Paragraph No. 318:** Because Defendants have since voluntarily dismissed

their Third Counterclaim (D.I. 16), no response to these allegations is required.

319.    Without justification, the University intentionally procured Sotheby's breach of its contract with the Borders when it communicated to Sotheby's that the Artwork had gone missing from its collection and that the University still owned the Artwork when, upon information and belief, the University knew that any claims it may have allegedly had in or to the Artwork have long been extinguished, or despite a high degree of awareness of the probable falsity of its claims.

**Answer to Paragraph No. 319:** Because Defendants have since voluntarily dismissed

their Third Counterclaim (D.I. 16), no response to these allegations is required.

320.    As a direct result of the University's communications to Sotheby's that the Artwork had gone missing from its collection and that the University still owned the Artwork, Sotheby's withdrew the Artwork from its intended sale.

**Answer to Paragraph No. 320:** Because Defendants have since voluntarily dismissed

their Third Counterclaim (D.I. 16), no response to these allegations is required.

321.    The Borders have been damaged by the University's intentional procurement of Sotheby's breach of its contract with the Borders because, now that the Artwork has been withdrawn from its intended sale, the Artwork will no longer be "fresh" to the market if it is subsequently sold, and the sale price it can achieve will be lower as a result.

**Answer to Paragraph No. 321:** Because Defendants have since voluntarily dismissed

their Third Counterclaim (D.I. 16), no response to these allegations is required.

322.    The Borders have been damaged by the University's intentional procurement of Sotheby's breach of its contract with the Borders because, now that the Artworks has been withdrawn from its intended sale, the Borders' otherwise unimpeachable reputation in their community has been tarnished.

**Answer to Paragraph No. 322:** Because Defendants have since voluntarily dismissed

their Third Counterclaim (D.I. 16), no response to these allegations is required.

## PRAYER FOR RELIEF

A.    Howard University denies that Defendants are entitled to any relief, including the

relief requested, and further denies the allegations contained in the Prayer for Relief.

      B.      Howard University denies that Defendants are entitled to any relief, including the relief requested, and further denies the allegations contained in the Prayer for Relief.

      C.      Howard University denies that Defendants are entitled to any relief, including the relief requested, and further denies the allegations contained in the Prayer for Relief.

      D.      Howard University denies that Defendants are entitled to any relief, including the relief requested, and further denies the allegations contained in the Prayer for Relief.

      E.      Howard University denies that Defendants are entitled to any relief, including the relief requested, and further denies the allegations contained in the Prayer for Relief.

## JURY TRIAL DEMANDED

Howard University denies that Defendants are entitled to a jury trial, under Fed. R. Civ. P. 38(d), or otherwise.

## AFFIRMATIVE DEFENSES

By alleging the defenses set forth below, Howard University does not concede that the University bears the burden of proof or persuasion with respect to any such defense.

### FIRST AFFIRMATIVE DEFENSE

Defendants fail to state a claim against Howard University for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Defendants' Counterclaim is barred by the doctrine of equitable estoppel.

### THIRD AFFIRMATIVE DEFENSE

Defendants' Counterclaim is barred by the doctrine of unclean hands.

## RESERVATION

Howard University expressly reserves the right to assert additional defenses when and if

11888944

they become appropriate during this action.

WHEREFORE, Howard University, having fully answered the Counterclaim, prays for, in addition to the relief sought in the Complaint:

1. An order dismissing the Defendants' Counterclaim with prejudice in its entirety.

2. An award of Howard University's reasonable attorneys' fees and costs in defending the Counterclaim.

3. Such other and further relief as the Court deems just and appropriate.

DATED:      New York, New York      PATTERSON BELKNAP WEBB & TYLER LLP
            July 30, 2020

                                    By: _____

                                         Peter C. Harvey
                                         Erik Haas
                                         Jo Backer Laird
                                         Clinton W. Morrison
                                         PATTERSON BELKNAP WEBB & TYLER LLP
                                         1133 Avenue of the Americas
                                         New York, NY 10036-6710
                                         Tel:  (212) 336-2000
                                         Fax: (212) 336-2222
                                         pcharvey@pbwt.com
                                         ehaas@pbwt.com
                                         jblaird@pbwt.com
                                         cmorrison@pbwt.com

                                         *Attorneys for Plaintiff Howard University*