UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

HOWARD UNIVERSITY,

                         Plaintiff-Counterclaim Defendant,

         -v-

LARRY BORDERS, et al.,

                       Defendants-Counterclaim Plaintiffs.

         -and-

CENTRALIA MADONNA, a drawing

                       Defendant-in-Rem

-------------------------------------------------------------------- X

|  |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: _08/17/2022_ |

20-cv-04716 (LJL)

AMENDED OPINION AND
ORDER

LEWIS J. LIMAN, United States District Judge:

       The bench trial in this case is scheduled for September 28, 2022.  Plaintiff-Counterclaim

Defendant Howard University ("Plaintiff" or "Howard") and Defendants-Counterclaim Plaintiffs

Larry Borders and Virginia Borders (collectively, "Defendants") each move in limine to exclude

evidence offered by the other or for sanctions.

       "The purpose of an in limine motion is 'to aid the trial process by enabling the Court to

rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are

definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *United States v.

Ulbricht*, 79 F. Supp. 3d 466, 478 (S.D.N.Y. 2015) (quoting *Palmieri v. Defaria*, 88 F.3d 136,

141 (2d Cir. 1996)).  "The trial court should exclude evidence on a motion in limine only when

the evidence is clearly inadmissible on all potential grounds." *Id.* (quoting *United States v.

Ozsusamlar*, 428 F. Supp. 2d 161, 164–65 (S.D.N.Y. 2006)); *see also King v. Wang*, 2021 WL

5232454, at *1 (S.D.N.Y. Nov. 9, 2021).  This order resolves the pending motions.

I.     **Defendants' motion to preclude Lisa Jones Gentry from testifying at trial**

Defendants move to preclude Howard employee and in-house attorney, Lisa Jones Gentry, from testifying at trial.  Dkt. No. 66.  They argue that Howard's failure to identify Ms. Jones Gentry as an individual likely to have discoverable information on its initial disclosures and to produce her for her noticed deposition warrant the extreme remedy of preclusion.  Dkt. No. 69 at 1–2.

Ms. Jones Gentry is an in-house attorney with Howard, holding the position of Senior Counsel for Business Transactions & Technology.  Dkt. No. 32-1 ¶ 1.  In May 2020, she commissioned and supervised an investigation conducted by the Director of Howard's Gallery of Art regarding the ownership and history of Charles White's *Centralia Madonna* (the "Artwork"). *Id.* ¶¶ 3–6.  On June 2, 2020, she sent an email to a representative of Sotheby's Inc. in which she stated that it was Howard's position that the Artwork still belonged to Howard and was never sold to any third party, and that Howard "has documentation proving that the work was in the University's possession as late as 1971 but that as of the 1976 Collection Inventory, the Work was missing from the Collection."  Dkt. No. 70-12.  She also is listed as one of two attendees from Howard in notes taken by Sotheby's from a meeting in May 2020 related to the provenance of the Artwork.  Dkt. No. 70-11.  In December 2020, she submitted a Declaration to this Court, in opposition to Defendants' motion for an in camera inspection of certain documents withheld or redacted by Howard.  Dkt. No. 32-1.

Ms. Jones Gentry was not listed by Howard on its Rule 26(a)(1) initial disclosures as an individual "likely to have discoverable information."  Fed. R. Civ. P. 26(a)(1); *see* Dkt. No. 70-2. On September 9, 2020, Howard served its Responses and Objections to the Defendants' First Set of Interrogatories.  Dkt. No. 70-3.  Ms. Jones Gentry was not listed in response to Interrogatory No. 1, which sought the identity of "all persons who have knowledge or information relevant to

the subject matter of the Action"; Howard referred Defendants to the individuals identified in its initial disclosures. *Id.* at 3.

Nonetheless, on September 14, 2020, Defendants served Howard with a Notice of Deposition for Ms. Jones Gentry. Dkt. No. 70-5. Howard agreed to produce Ms. Jones Gentry but Defendants then agreed to Howard's request for a postponement of her deposition due to family health issues. Dkt. No. 70-6. The parties were not able to schedule her deposition including because of the availability of Defendants' counsel. On December 10, 2020, Howard's counsel sent an email to Defendants' counsel stating that Howard would keep in mind Defendants' counsel's "availability for Ms. Jones-Gentry's deposition" and was "amenable to scheduling her deposition for January [2021], including beyond January 4 [2021]," the then-operative discovery cutoff date. *Id.* at 6. Defendants never followed up. Defendants never took her deposition; Howard never amended its initial disclosures to list her as a person with relevant information. Howard has listed Ms. Jones Gentry in the Pretrial Order as a witness who "will testify as to when Howard first learned that the Artwork was no longer in its possession, including by addressing the June 2, 2020 email communication" to Sotheby's. Dkt. No. 63 at 10–11.

Defendants argue that they would be materially prejudiced if required to address her testimony because at no time during the discovery process did Howard offer any evidence—including expert opinion—contradicting either the statements specifically made by her, such as the June 2, 2022 email communication to Sotheby's, or the statements attributed to her by others. Dkt. No. 69 at 13. Moreover, Defendants argue that they were denied the opportunity to depose Ms. Jones Gentry, despite their repeated requests to do so, and therefore her testimony is unknown to them. *Id.*

Rule 26(a)(1) requires a party to identify in its initial disclosures "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Rule 26(e) requires a party to supplement its initial disclosures "in a timely manner" if it learns that its disclosures were incomplete or incorrect "in some material respect" if the additional or corrective information "has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). If a party violates those rules, it "is not allowed to use that information or witness" including at a trial "unless the failure was substantially justified or is harmless."[1] Fed. R. Civ. P. 37(c)(1). Rule 37(d) permits the Court to award sanctions, including preclusion, if "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A). Rule 37(b) also authorizes the Court to award similar sanctions for a party's failure to comply with a court order. See Fed. R. Civ. P. 37(b).

With these principles in mind, Defendants' motion is denied. "The duty to supplement a Rule 26 disclosure is 'only necessary when the omitted or after-acquired information has not otherwise been made known to the parties during the discovery process.'" *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 727 (S.D.N.Y. 2011) (quoting 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2049.1 (3d ed. 2010)); *see also Laspata DeCaro Studio Corporation v. Rimowa GmbH*, 2018 WL 3059650, at *9 (S.D.N.Y. June 20, 2018) (denying motion to strike where all parties to the action were aware of the witness's role throughout the litigation); *Universe Antiques, Inc. v. Vareika*, 2011 WL 5117057, at *5

---

[1] Rule 37(c) also authorizes the Court to impose lesser sanctions in connection with a violation of Rule 26. *See* Fed. R. Civ. P. 37(c)(1)(A)–(C).

(S.D.N.Y. Oct. 21, 2011) (same; denying motion to preclude witnesses at trial).  That principle

applies squarely here.  Defendants were well aware of Ms. Jones Gentry's identity and her role

from the beginning of the litigation and that it was possible that Howard might choose to use her

as a witness; her email has been a central piece of evidence in the case.  That is evidently why

Defendants sought to take her deposition.  Howard never disabused Defendants of the notion that

she might be a relevant witness who would end up testifying at trial.  There thus was no

obligation on Howard to supplement its initial disclosures.  And, even if there were such a duty,

the violation would be harmless.  Defendants knew throughout discovery of her role.  *See*

*Universe Antiques*, 2011 WL 5117057, at *5; *Fleet Capital Corp. v. Yamaha Motor Corp.,*

*U.S.A.*, 2002 WL 31108380, at *2 (S.D.N.Y. Sept. 23, 2002).  Defendants also will have a

fulsome opportunity to cross examine Ms. Jones Gentry at the bench trial of this action.

      The principal case relied upon by Defendants, *Lebada v. New York City Department of*

*Education*, 2016 WL 626059 (S.D.N.Y. Feb. 8, 2016), does not require preclusion.  That case

recognizes the unexceptional proposition that it is not sufficient under Rule 26 that the adverse

party know of the existence of the witness; she must also know that the disclosing party might

use the witness at trial.  *Id.* at *5 (citing *Pal v. New York Univ.*, 2008 WL 2627614, at *4

(S.D.N.Y. June 30, 2008)).  The court there excluded three sworn affidavits submitted by

plaintiffs in opposition to summary judgment because plaintiffs had "never made any Rule 26(a)

disclosures of witnesses at all notwithstanding repeated orders from the court that they do so,"

there was no evidence that it was clear that the witnesses would be offered as witnesses in the

case and defendants had no reason to investigate the witnesses or take their depositions, and

defendants suffered prejudice because they briefed their summary judgment motion without

reference to or knowledge of the witnesses' testimony.  *Id.* at *5–6.  In this case, by contrast,

Howard did not violate any court orders, Defendants had every reason to believe that Ms. Jones

Gentry might show up as a witness at trial, and Defendants have shown no prejudice.[2]

Defendants' argument that Ms. Jones Gentry's trial testimony should be precluded

because she failed to appear at her deposition is also without merit.  Rule 37(d) is "strictly

construed in this Circuit and only occurs where a deponent 'literally fails to show up for a

deposition session.'"  *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986) (quoting *SEC v.

Research Automation Corp.*, 521 F.2d 585, 588–89 (2d Cir. 1975)); *see also Pantheon*

*Properties, Inc. v. Houston*, 2022 WL 909793, at *4 (S.D.N.Y. Mar. 28, 2022).  The record does

not establish that Ms. Jones Gentry failed to appear for her deposition.  Her appearance on the

date for which she was noticed was excused and Defendants never followed up to reschedule her

deposition.  Thus, sanctions cannot be imposed under Rule 37(d).  Nor can they be imposed

under Rule 37(b).  If Defendants truly were interested in taking her deposition and if Howard had

failed to make her available, Defendants could have sought a Court order for her deposition.

Howard did not fail to make her available and the record does not support that the Defendants

truly were interested in her deposition; in any event, they did not obtain a Court order and

Howard did not violate a Court order.  Sanctions are not appropriate.  *See Salahuddin*, 782 F.2d

---

[2] The other cases cited by Defendants do not support their argument.  *Agence France Presse v. Morel*, 293 F.R.D. 682 (S.D.N.Y. Oct. 24, 2013) involved the wholesale failure of the plaintiff to disclose a computation of damages in violation of Rule 26(a)(1)(A)(iii); the court ordered preclusion because defendants were otherwise unaware of plaintiff's theory and had no opportunity to take discovery and because it found that plaintiff was engaged in deliberate sandbagging.  *Id.* at 683–88.  In *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004), the court excluded the affidavit of plaintiff's expert submitted for the first time in opposition to a motion for summary judgment; the plaintiff had not previously identified the expert in violation of Rule 26(a)(2) and the failure had prejudiced defendant who made its motion for summary judgment on the basis of what it was entitled to assume was the strength of the plaintiff's case at the close of discovery.  *Id.* at 606–09.

at 1131 ("The plain language of Rule 37(b) requires that a court order be in effect before sanctions are imposed.").

## II.    Defendants' motion for sanctions for failure to produce "inventories"

Defendants move for Rule 37 sanctions for Howard's failure to produce responsive documents in its possession.  Dkt. No. 67.  Specifically, Defendants claim that Howard failed to produce certain "inventories" of its art collection after 1976.  Dkt. No. 69 at 2.  Defendants seek a direction that it be deemed established that Howard knew or should have known, as of 1976, that the Artwork was missing from its collection.  Dkt. No. 69 at 2.

Defendants served their first request for production of documents on July 9, 2020.  Dkt. No. 74-14.  That request demanded that Howard produce 71 categories of documents.  *Id.*  It requested all documents identified in Howard's Rule 26(a)(1) initial disclosures, but it did not specifically request copies of inventories prepared by Howard of its art collection.  *Id.* at 6.  By email of September 23, 2020, Defendants' counsel complained to Howard that its document production omitted documents that Howard had identified in its initial disclosures as relevant to its claims, including "Gallery inventory records relating to the Artwork."  Dkt. No. 74-15 at 14–15.  That same day, Howard's counsel responded that its first document production included "Gallery inventory records relating to the Artwork."  *Id.* at 14.  Later that day, Defendants' counsel responded, expanding the request to "inventory records of art works in Howard's collection."  *Id.*  Howard's counsel later stated that it had produced "the 1976 inventory" and noted that Defendants' counsel's email "misstates the contents of our Rule 26 disclosures.  Those disclosures referred to 'Gallery inventory records relating to the Artwork'; they do not reference 'inventory record of art works in Howard's collection' apart from the Artwork."  *Id.* at 13.  Howard's counsel then by email dated October 2, 2020 stated that it had discovered additional documents that fell within the category of "Gallery inventory records relating to the Artwork"

7

(the second category listed in Howard's initial disclosures) and would be producing them. *Id.* at 12–13. Defendants clarified by email on October 2, 2020, that it was seeking documents and communications sufficient to identify all inventories that were compiled of Howard's art collection since January 1, 1972, and not just those that included the Artwork. *Id.* at 11. Howard's counsel responded on October 6, 2020, that by the end of the week it would have produced all of the prior gallery inventories of which Howard was aware; it added that Howard was unaware of a gallery inventory that did not include the Artwork. *Id.* at 9–10; Dkt. No. 70-13.

Meanwhile, in response to a subpoena that was served on or about September 18, 2020, Sotheby's produced a chart of 59 artworks and a spreadsheet listing 150 works of art, neither of which included the Artwork; it also produced a listing of 130 works of art with their retail replacement value for insurance purposes and the auction estimate listing for 41 works of art which also did not include the Artwork. Dkt. Nos. 70-7, 70-8, 70-9, 70-10. The lists were sent to Sotheby's in connection with its appraisal of certain of Howard's works of art. Dkt. No. 70-18 at 111–12. On October 23, 2020, Defendants' counsel requested a "meet and confer" with Howard counsel to address, among other things, the Sotheby's production and "the failure of the University to produce the inventories shared by Sotheby's." Dkt. No. 74-15 at 5. A few days later, during correspondence about the Defendants' intent to file a motion to compel, Howard counsel requested that, if Defendants filed such a motion, they place the valuations or appraisals under seal, nothing that they were "of certain works of art" owned by Howard. *Id.* at 2. In October 2020 and again in December 2020, Defendants' counsel filed letter motions to compel. Dkt. Nos. 28, 31. It never filed a motion to compel with respect to the inventories.

There is no basis for sanctions on Howard, much less the remedy that the Defendants seek in this case.  Rule 37(d) sanctions are available when "a party, after being properly served with" a request for production "under Rule 34, fails to serve its answers, objections, or written response."  Fed. R. Civ. P. 37(d); *see Jindan Wu v. Seoul Garden, Inc.*, 2018 WL 507315, at *11 (E.D.N.Y. Jan. 22, 2018) (stating that Rule 37(d) applies to requests for production).  "This rule applies if the party requested to permit inspection fails to serve a written response to the request."  8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2291; *see* Fed. R. Civ. P. 37 advisory committee's note to 1970 amendment (stating that Rule 37(d) is concerned with "total noncompliance").  As a general matter, if a party serves a response, but yet refuses to produce responsive documents, the proper remedy is a motion to compel.  *See Scantibodies Lab'y, Inc. v. Church & Dwight Co.*, 2016 WL 11271874, at *17 n.15 (S.D.N.Y. Nov. 4, 2016), *report and recommendation adopted*, 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017).

Rule 37(d) is not properly invoked here.  Defendants never served a Rule 34 request for production that sought production of inventories that did not include the Artwork.  It did serve a request that asked for documents referenced in Howard's Rule 26(a)(1) initial disclosures but—as previously noted—the initial disclosures referred to inventories that related to the Artwork and not those that omitted the Artwork.  Thus, it failed to satisfy the necessary condition precedent for Rule 37(d) sanctions, the documents it seeks were never mentioned in a request for production pursuant to Rule 34.  Moreover, and dispositively, Howard did not fail to serve answers, objections, and written responses.  It served such responses.  Dkt. No. 74-18.  It also told Defendants in October 2020, that it did not believe that the inventories were relevant.  Dkt. No. 74-15.  If, at that point, Defendants desired to require Howard to search for and produce

inventories that did not reference the Artwork, the proper approach for it would have been to bring a motion to compel. It did not do so. It cannot seek sanctions under Rule 37(d).

It also cannot obtain sanctions under Rule 37(b). As previously noted, that Rule is only properly invoked when a party violates a court order. *See Arneauld v. Pentair, Inc.*, 2012 WL 5932956, at *13 (E.D.N.Y. Nov. 26, 2012) ("there must be a valid court order in force before sanctions may be imposed pursuant to Rule 37(b)(2)." (quoting *Daval Steel Products, a Division of Francosteel Corp. v. M/V Fakredine,* 951 F.2d 1357, 1364 (2d Cir.1991)).[3] There was no court order requiring production of the inventories. Defendants' motion thus is denied.

### III.    Defendants' motion to exclude the testimony of expert Russell Panczenko

Defendants ask the Court to exclude the expert opinion of Howard expert Mr. Panczenko on the grounds that it is inadmissible under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993), and is irrelevant. Dkt. No. 69 at 2. Defendants argue that Mr. Panczenko has insufficient qualifications and that his opinion is methodologically unsound. *Id.* at 19–24. Defendants' motion is denied.

Mr. Panczenko was the Chief Curator of the Chazen Museum of Art at the University of Wisconsin-Madison from October 1984 until his retirement in September 2017. Dkt. No. 70-14 ¶ 4. Before that, from 1980 to 1984, he was Assistant Director of the Williams College Museum of Art. *Id.* ¶ 8. Howard offers his testimony to establish "the standard of care applicable to college and university art galleries in connection with those entities' maintenance, management, operation, and oversight of their art collections." *Id.* ¶ 2. Among other things, Mr. Panczenko is expected to opine that it is not uncommon for university and college art galleries not to know the

---

[3] "[I]n the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002). Defendants here, however, do not ask the Court to invoke its inherent power.

precise location of art in their collections until gallery or museum art staff or students acting at

their direction are able to manually locate, identify, and inventory the artworks.  *Id.* ¶ 3c.  He

also is expected to opine that Howard "could not reasonably have been expected to have

discovered that the Artwork was missing from its collection prior to May 2020, when the

University was alerted by Sotheby's to the fact that the Artwork was in Sotheby's possession."

*Id.* ¶ 3d.  Defendants argue that the Court should not hear Mr. Panczenko's testimony because it

is inconsistent with Howard's written admission that a comprehensive inventory prepared by

Howard in 1976 indicated that the Artwork was missing and because it is "centered around a

single book he read" that "offers no direct support for his opinions" and constitutes speculation.

Dkt. No. 69 at 19–23.

As a general matter, *Daubert* motions function somewhat differently in the context of

bench trials:

> [T]he court's gatekeeper role is necessarily different during a bench trial. In a bench
> trial, the judge acts as both gatekeeper and factfinder.  The judge must determine
> both whether expert evidence is admissible under Rule 702 and whether it is
> credible.  When the gatekeeper and the trier of fact are the same, the court may
> admit evidence subject to the ability later to exclude it or disregard it, if the evidence
> turns out not to meet the standard of reliability under Rule 702.

*Town & Country Linen Corp. v. Ingenious Designs LLC*, 2022 WL 2757643, at *2–3 (S.D.N.Y.

July 14, 2022) (quoting 4 Weinstein's Federal Evidence § 702.02); *see also In re Salem*, 465

F.3d 767, 777 (7th Cir. 2006) ("[W]here the factfinder and the gatekeeper are the same, the court

does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it

turns out not to meet the standard of reliability established by Rule 702.").

Thus, "where a bench trial is in prospect, resolving *Daubert* questions at a pretrial stage

is generally less efficient than simply hearing the evidence."  *Victoria's Secret Stores Brand*

*Mgmt., Inc. v. Sexy Hair Concepts, LLC*, 2009 WL 959775, at *6 n.3 (S.D.N.Y. Apr. 8, 2009).

Defendants rely on what it contends are Howard's judicial admissions.  Paragraph 51 of the complaint alleges that "[w]hen the Gallery's then-curator, Dr. A.J. Carter, retired in 1976, he left his successor with a comprehensive inventory of the entire contents of the Gallery's collection."  Dkt. No. 1 ¶ 51.  Paragraph 53 of the complaint then alleges that "[t]he Carter inventory indicates that the Work was missing as of the time the inventory was completed and that Cater believed that it may have been on loan to another institution, as the inventory says 'Loan(?)' next to the Work under a column marked Miscellaneous."  *Id.* ¶ 53.  Paragraph 54 of the complaint alleges that "[t]he University's records confirm that the Work was not loaned out to any other institution at any point between the time Mr. Baker saw the work in 1973–74 and the time the Work was recorded as missing by Dr. Carter in 1976.  None of the 1973–1976 Annual Reports for the Howard University Department of Art (of which the Gallery was a part at the time) list the Work as having been loaned out, but each of those reports did list loans of other works by other artists during that period."  *Id.* ¶ 54.  That section of the complaint ends that "[s]ince the Carter inventory was finalized in 1976, the University has been unable to locate the work."  *Id.* ¶ 57.

Those allegations are judicial admissions.  "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re. Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *see also Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003); *Soo Line R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997); *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2022 WL 1515120, at *10 & n.6 (S.D.N.Y. May 13, 2022).  The Court thus will take the allegations in those paragraphs as admitted by Howard and will not permit Howard to contradict them.

The parties dispute the inferences that should be drawn from those admissions. Defendants argue that the Court should draw the inference that Howard knew that the work was missing and that it should then have begun to investigate the circumstances under which it was lost.  Dkt. No. 69 at 20.  Howard disputes that assertion.  Dkt. No. 73 at 20. The resolution of that dispute, however, is not dispositive at this time as to whether the Court should permit Mr. Panczenko to testify and to offer the opinions set forth in this report.  As a practical matter, the Court has already read Mr. Panczenko's report.  The Court need not now decide the inferences that should be drawn from the competing evidence or whether Mr. Panczenko's report satisfies *Daubert*.  "In this case, since the Court has already been exposed to [the expert]'s analysis and to competing arguments regarding its weight and admissibility, permitting cross-examination and permitting the Defendant to renew its *Daubert* motion after [the expert] has stepped off the stand will only permit the Court to analyze the Rule 702 issues on a more complete record."  *3DT Holdings LLC v. Bard Access Sys. Inc.*, 2022 WL 2037853, at *1 (S.D.N.Y. May 10, 2022) (citing *Joseph S. v. Hogan*, 2011 WL 2848330, at *2 (E.D.N.Y. July 15, 2011) (stating that, in a bench trial "expert testimony should be admitted so that the Court could have the benefit of live testimony and cross-examination to determine how much weight, if any, to give to the expert's conclusions")).  As Judge Caproni cogently put it, "there is no need for the Court to 'gate-keep expert testimony from [itself].'" *Matter of Manhattan by Sail, Inc.*, 436 F. Supp. 3d 803, 810 (S.D.N.Y. 2020) (quoting *Hogan*, 2011 WL 2848330, at *2).

## IV.   Howard's motion that the Court exclude all evidence that has been rendered irrelevant by the Court's summary judgment order

Howard argues that Defendants should be precluded by the Court's summary judgment order from offering evidence on the following issues: (1) that Howard had title to the Artwork; (2) theories as to how the Artwork could have been conveyed to Defendants' including that it

may have been loaned by Howard to the Barnett-Aden Gallery; (3) the whereabouts of other artworks owned by Howard; and (4) the claim that Howard was negligent in failing to secure and/or monitor the Artwork or in entrusting it to a faithless agent.  Dkt. No. 65 at 4–5. Defendants do not dispute that, after the Court's March 1, 2022 summary judgment order, the only remaining issue for the Court to decide is whether the Defendants will prevail on their affirmative defenses of laches and that evidence that is not relevant to that defense should be excluded.  Dkt. No. 71 at 2.  It argues, however, that evidence regarding what Howard could have discovered about the transfer of the Artwork had it conducted an investigation and taken action in 1976, including evidence regarding the gallery to which Howard allegedly loaned the Artwork, remains relevant to the Defendants' defense.  *Id.* at 3.

Howard's objection is in the nature of a relevance objection.  "The definition of relevance under Fed. R. Evid. 401 is very broad, and as a result, the standard for relevance is very low.  So long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry.  *United States v. Johnson*, 2018 WL 1115778, at *9 (S.D.N.Y. Feb. 27, 2018) (cleaned up).  The risk of the admission of irrelevant evidence in a bench trial is that it will prolong the proceedings; the risk of its exclusion is that the Court will court error and make a decision on an incomplete record.  *See Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 2004 WL 1970144, at *5 (S.D.N.Y. Sept. 3, 2004) ("While standards for admissible evidence are not 'out the window entirely' in a bench trial, 'all doubts at a bench trial should be resolved in favor of admissibility.'" (citation omitted)); 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2885 ("In nonjury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting

evidence."). Balancing those risks, the admission of the evidence in question will not unduly prolong the proceedings even if it turns out to be of marginal relevance. Accordingly, Howard's motion is denied.

**V.      Howard's motion that Defendants present their case first**

Howard asks that the Defendants—who bear the burden of proof on their affirmative defense—present their case first at trial. Dkt. No. 65 at 7–9. The parties have agreed that, subject to Howard making its representatives identified by Defendants in their List of Trial Witnesses contained within the Pretrial Order available for live examination as part of Defendants' case-in-chief, the Defendants have no objection to presenting their case first. Dkt. No. 71 at 7. Accordingly, the motion is moot. Defendants will present their case first, subject to the commitments made by Howard with respect to its representatives.

**VI.     Howard's motion that evidence and argument related to the 2019 Sotheby's appraisal of certain artworks should be excluded.**

Howard moves for exclusion on relevance grounds of evidence and argument related to the 2019 Sotheby's appraisal, in which the Artwork was not in the list of works of art submitted to Sotheby's. Dkt. No. 65 at 9-12. Howard argues that its omission is irrelevant both because it does not establish Howard's knowledge that the Artwork was missing as of that date and because, even if Howard knew that the Artwork was missing as of that date, there is no evidence that Howard in 2019 could have traced the Artwork to the Defendants or that it acted without reasonable diligence in bringing suit one year later. *Id.* Defendants respond that the 2019 Sotheby's appraisal would be irrelevant if Howard admitted that it knew the Artwork was missing as early as 1976, but if the Court does not take that fact as admitted, the appraisal evidence tends to support the inference that Howard knew the Artwork was missing well before 2019. Dkt. No. 71 at 8–10.

15

Howard's motion is denied.  Relevance is broadly construed.  *See Johnson*, 2018 WL 1115778, at *9.  Defendants offer evidence that the list included works of fine art by the artist (Charles White) who created the Artwork and that it was limited to artworks with a value in excess of $10,000.  Assuming those facts are established, the evidence could lead to an inference that Howard knew that the Artwork was missing as of 2019 and that therefore it acquired the knowledge that it was missing before 2019.

## VII.  Howard's motion to exclude testimony of Mr. Panczenko before he has testified

This motion is unopposed and therefore moot because Defendants will be presenting their case first.  Defendants have stated that they have no intention of offering testimony from Mr. Panczenko during their case.  Dkt. No. 71 at 10.

## CONCLUSION

For these reasons, Plaintiffs' and Defendants' motions in limine are DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 64, 66–68.


SO ORDERED.

Dated: August 17, 2022
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge